## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TZUMI ELECTRONICS LLC, ) | **Civil Action No.:** |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| THE BURLINGTON INSURANCE ) | |
| COMPANY, an Illinois Corporation, ) | |
| ) | |
| Defendant. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

## COMPLAINT FOR
## DECLARATORY RELIEF RE THE DUTY TO DEFEND,
## AND BREACH OF CONTRACT

## JURY TRIAL DEMANDED

In this insurance coverage suit, Plaintiff Tzumi Electronics LLC ("Tzumi") seeks a declaratory judgment that Defendant The Burlington Insurance Company ("Burlington") had a duty to defend Plaintiff in the action styled as *Talley v. Tzumi Electronics LLC*, Case No. 1:20-cv-04074-VM in the United States District Court of the Southern District of New York (the "Talley Action") and must reimburse Tzumi for all reasonable defense expenses incurred in the Talley Action. In addition, a breach of contract action arises by virtue of the terms of a confidential settlement agreement as potentially covered claims were resolved at the time of that settlement. All defense expenses bear prejudgment interest at the statutory rate under New York law at 9% per annum from the date each expense is due.

## THE PARTIES

1.     Plaintiff Tzumi Electronics LLC is a limited liability corporation consisting of four individual members: Ezra Erani, Gabriel Khezrie, Rena Haber, and Hillel Haber, all of whom are citizens of New York.

2.     On information and belief, Defendant Burlington is, and at all times herein mentioned was, an insurance company organized and existing under the laws of the state of Illinois and with its principal place of business at 238 International Road, Burlington, North Carolina 27215.

## JURISDICTION

3.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties as the Plaintiff Tzumi is a citizen of New York in that it is a New York limited liability company and has its principal place of business in New York. Defendant Burlington is a citizen of Illinois and Connecticut for purposes of diversity jurisdiction in that it is an Illinois corporation and has its principal place of business in Connecticut.

5.     The amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs based on the defense expenses Tzumi has incurred in the Talley Action,

tzumi coverage complaint vs. burlington.docx 10964.003

1

which has exceeded $146,000.

## VENUE AND CHOICE OF LAW

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 since Tzumi's principal place of business is in this federal judicial district.

7.      On information and belief, Burlington sells insurance and defends lawsuits in New York, including in this District.

8.      This federal judicial district is the place where the Policy was sold and delivered by Burlington to Tzumi in this District.

9.      New York law governs Burlington's obligations to Tzumi.

## THE BURLINGTON POLICY

10.     Burlington issued to Tzumi a primary commercial general liability policy (Policy Number 0895CAP0009761) (the "Policy") for the period from December 19, 2017 to December 19, 2018. A copy of Burlington's August 10, 2022 Disclaimer Letter containing the pertinent policy language is attached to Tzumi's Complaint as **Exhibit "1"**.

11.     The Policy's "Personal and Advertising Injury Liability Insuring Agreement" provides, in pertinent part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .

12.     The Policy defines "personal and advertising injury" as follows:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
>
> . . .

f. The use of another's advertising idea in your "advertisement"

13.     The Policy defines "advertisement" as follows:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material place on the Internet or on similar electronic means of communications; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

14.     The Policy includes the following relevant Exclusions:

b. Material Published With Knowledge of Falsity

"Personal and advertising injury" arising out of oral or written publication in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

* * *

g. Quality or Performance of Goods- Failure to Conform to Statements

"Personal and advertising injury" arising out of the failure of good, products or services to conform with any statement of quality or performance made in your "advertisement".

h. Wrong Description of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement"

* * *

p. Recording and Distribution of Material Or Information in Violation of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

. . .

(4) Any federal, state or local statute, ordinance or regulation or than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting recording, sending,

transmitting, communicating or distribution of material or information.

## THE TALLEY ACTION

15.     On May 27, 2020, Sydney Talley and Lori Ervin filed a Complaint against Tzumi on behalf of themselves and an unknown number of similarly situated individuals (collectively, "Talley") in the Talley Action. Attached as **Exhibit "2"** is a copy of the Talley Action Complaint.

16.     The Complaint was amended twice, with the final amendment on June 29, 2021. A copy of the Second Amended Complaint ("SAC") is attached as **Exhibit "3"**.

17.     In the SAC, Talley explicitly alleges the following claims for relief: (1) Violation of Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code § 17.41, *et. seq.*) on Behalf of the Texas Class; (2) Violation of Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*) on behalf of the Florida Class; (3) Violation of Various State Consumer Protection Statutes, on Behalf of the Multistate Class; and (4) Breach of Express Warranty, on Behalf of the Classes.

18.     The SAC alleges:

3. [T]echnology companies like Defendant Tzumi Electronics LLC. ("Tzumi") market and sell portable chargers, also known as power banks.

* * *

5. A power bank's ability to charge [personal electronic devices ("PEDs")] is measured in milliampere-hours ("mAh"). A power bank with a higher mAh has an enhanced ability to recharge PEDs compared to a power bank with a lower mAh—in short, it promises to deliver more "juice."

6. Power banks are not fashion items or status symbols. Consumers do not buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not usually serviced or repaired once sold; there is no significant relationship between the consumer and the company after purchase. The main point of buying a power bank is to have the ability to get more power.

7. Accordingly, consumers prefer and are willing to pay more for power banks with a higher mAh.

8. Technology companies are aware of this. One such company is TZUMI. TZUMI markets and sells a variety of models of power banks (which do not materially differ except to the extent they have different mAh ratings) hereafter referred to as the Products ("Products"). The various Product models TZUMI sells include (but are not limited to) the PocketJuice models with mAh representations: 5,000, 8,000, 10,000, 15,000 and 20,000. Apart from the represented mAh amounts, there is no material difference among TZUMI's Products. All of the Products are sold using a prominent and false representation that they have a certain mAh when in fact they all have less.

* * *

10. For profit and a higher market share, TZUMI exploits consumers' preferences for power banks with higher mAh. TZUMI intentionally deceives consumers by misrepresenting the amount of power its Products can transfer to PEDs. TZUMI advertises its Products as delivering more mAh than its Products are able to provide.

11. Plaintiffs Sydney Talley and Lori Ervin relied on TZUMI's misrepresentations when they each bought a Pocket Juice Portable Charger 4000mAh.  TZUMI labels the Pocket Juice as having 4,000 mAh: however the Pocket Juice never could and cannot deliver 4,000 mAh. As a result, Ms. Talley and Ms. Ervin paid a premium for a TZUMI Product that did not work as represented and warranted.

* * *

19. TZUMI manufactures, markets, and distributes for sale nationwide, including through major retailers such as Walmart and Amazon, a number of models of Power Banks. It does so by prominently representing that the Products have a certain mAh. Unfortunately for consumers, testing has shown the amount of mAh the Products actually have is substantially lower than what TZUMI represents.

20. By deceiving consumers about the Products' mAh, TZUMI is able to sell more of, and charge more for, the Products than it could if they were labeled accurately. Further, TZUMI is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

* * *

23. TZUMI draws attention to its Products' mAh by placing the mAh rating right next to the name of the Products, and by prominently displaying the mAh rating on advertising materials and the product package.

* * *

tzumi coverage complaint vs. burlington.docx 10964.003

25. TZUMI knew at the time it sold the Products that they were incapable of delivering the mAh it promised.

\* \* \*

27. To convert and distribute power from the Products to the PEDs, the Products use power from their own internal batteries. Running the internal circuit board and converting power for charging PEDs is a process that uses as much as 30-40% of the internal cells' power.  In its July 20th letter (ECF No. 16), TZUMI admitted that it bases its mAh representations on the capacity of the internal battery cells, not the Products themselves. TZUMI's Products are therefore incapable of delivering the full advertised mAh to recharge a consumer's PED.

\* \* \*

33. In or about 2017 or 2018, while in Spring Hill, Florida, Ms. Talley saw, in Walmart, TZUMI's mAh representation about the Pocket Juice 4000 and relied on it.

34. In or about November, 2018, while in Austin, Texas, Ms. Ervin saw, in Home Depot, TZUMI's mAh representation about the Pocket Juice 4000 and relied on it.

\* \* \*

37. After purchasing the Pocket Juice 4000, Ms. Talley and Ms. Ervin were disappointed to find they were forced to recharge the Pocket Juice 4000 more often than they expected.

38. Ms. Talley and Ms. Ervin, like any reasonable consumer and member of the putative classes, would not have purchased the Product, or would have paid less, had they known the truth about its mAh.

\* \* \*

98. TZUMI's practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:

a.   California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

. . .

e.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*.;

. . .

g.   Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq*.;

. . .

l.   Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.*;

\* \* \*

Ms. Talley and Ms. Ervin demand judgment on behalf of themselves and the Classes as follows:

a.   An order certifying the proposed Classes; appointing Ms. Talley and Ms. Ervin as the representatives of the Classes; and appointing Ms. Talley and Ms. Ervin's undersigned counsel as Class counsel for the Classes;
b.   A declaration that TZUMI is financially responsible for notifying members of the Classes of the pendency of this suit;
c.   An order requiring proper, complete, and accurate labeling of the Products;
d.   Monetary damages, injunctive relief, and statutory damages in the maximum amount provided by law;
e.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent;
f.   An order awarding Ms. Talley and Ms. Ervin and the other members of the Classes the reasonable costs and expenses of suit, including their attorneys' fees;
g.   An order awarding Ms. Talley and Ms. Ervin and the other members of the Classes pre- and post-judgment interest in the maximum amount provided by law; and
h.   Any further relief that the Court may deem appropriate.

## THE SETTLEMENT AGREEMENT

19.   On August 30, 2022, the parties of the Talley Action reached a confidential agreement to settle their dispute (the "Settlement Agreement").

20.   Additional clarifications of the factual allegations to be resolved by the parties were integrated in the Settlement Agreement. These clarified factual allegations as they existed if the matter had proceeded to a pretrial conference statement, which would have superseded the pleadings as a matter of law.

## BURLINGTON'S DENIALS

21.   On or before August 27, 2019, Tzumi first notified Burlington of the underlying claim by submitting a notice of loss.

22.   Burlington denied coverage via letter on August 27, 2019. A copy of the denial is attached as **Exhibit "4"**.

23.   On July 20, 2022 Tzumi's insurance coverage counsel sent a letter to

Burlington requesting a reconsideration of its defense obligations, notifying Burlington of a proposed settlement agreement, and including a copy of the proposed agreement. A copy of this letter (without the confidential proposed agreement) is attached as **Exhibit "5"**.

24.     On August 10, 2022, Burlington again denied any duty to provide defense reimbursement or pay the settlement which evidenced potential coverage at the time of its execution. A copy of this letter is attached as **Exhibit "1"**.

### ALLEGATIONS OF DISPARAGEMENT ESTABLISH A POTENTIAL FOR COVERAGE UNDER POLICY OFFENSE (d)

### A Three-Element Test Applies to This Offense

25.     The Policy defines "Personal and advertising injury" disparagement offense as having three elements relevant here: (1) "injury . . . arising out of"; (2) "oral or written publication, in any manner, of material"; (3) "that disparages a person's or organization's goods, products or services."

26.     Each of the three elements described in the preceding paragraph was potentially met by the allegations of the Complaint and the SAC, thereby triggering Burlington's duty to defend Tzumi.

### Element One – "Injury Arising out of" Offense (d) Is Alleged

27.     The Burlington Policy defines "personal and advertising injury" as any "injury . . . arising out of" a listed offense.

28.     "Injury . . . ar[ose] from" Tzumi's alleged advertisement of its products to "best" its competitors depicting them as price-gougers based on express allegations of the complaint. These include contentions that:

> 20. By deceiving consumers about the Products' mAh, TZUMI is able to sell more of, and charge more for, the Products than it could if they were labeled accurately. Further, TZUMI is incentivized to mislead consumers to **take away market share from competing products**, thereby increasing its own sales and profits.

**Exhibit "3"** (emphasis added); see also **Exhibit "2"**, ¶ 20.

29.     Liability from those attacks led to indirect "injury" to consumers because

standing under the statutory provisions in Cal. Civ. Code § 1770(a)(8) is conferred on claimants who could not secure products in a robust competitive marketplace due to displacement of disparaged competitors. Those sellers of alternative products were unable to claim their products possessed the same mAh capacity or who had to charge higher prices for products that did have equal mAh capacity. The SAC details the injuries suffered by the consumers directly related to their allegedly deficient relative performance from what they anticipated and would have allegedly secured had they purchased products promising equivalent performance from competitors:

> 37. After purchasing the Pocket Juice 4000, Ms. Talley and Ms. Ervin were disappointed to find they were **forced to recharge the Pocket Juice 4000 more often than they expected**.
>
> 38. **Ms. Talley and Ms. Ervin**, like any reasonable consumer and member of the putative classes, **would not have purchased the Product**, or would have paid less, **had they known the truth about its mAh**.

Exhibit "3" (all emphasis added); see also **Exhibit "2", ¶¶** 36, 37.

30.     "Arising out of" is not defined in the Burlington Policy. But it includes policy language that is of much broader significance than "caused by." New York law recognizes the term "arising out of" as meaning "originating from," "incident to," or "having connection with" and it should be construed broadly to require only "*some* causal relationship between the injury and the risk for which coverage is provided," not proximate causation.

31.     The class members' alleged injuries "originated from," were "incident to," or "had a connection with" Tzumi's disparagement of competitors because the pricing of Tzumi's power products made them appear much more affordable than competitors' similar products that are not claimed to be deceptively labeled. Further, Tzumi's portable power bank products enjoyed commercial success because they appeared to have more charging power for PEDs at lower prices than competing products.

32.     This indirect injury scenario is expressly alleged in the Talley Action, as statutory liability pursuant to Cal. Civ. Code §1770(a)(8) extends to "[d]isparaging the goods,

services, or business **of another** by false or misleading representation of fact." (emphasis added).

33.     Here, Tzumi's advertising of its product as able to deliver a particular mAh when they were in fact not able to do so "disparag[ed] [its competitors'] . . . products" and thereby also contemporaneously injured individual consumers by depriving them of a marketplace where the alternative products available to the Claimant consumers were accurately described.

34.     The products they purchased also appeared to have more charging power for PEDs at lower prices than competing products, making them appear to be better priced than their competitors and thus offering superior value. These commercial representations allegedly led Claimants to prefer Tzumi's products in preference to those of competitors and injuring Claimants. This, in turn, allegedly caused them to make inappropriate choices in their purchase of these products as a direct consequence of the content of Tzumi's publications.

35.     The "injury arising out of" element is met in the Talley Action by the claimants' allegations that the "injury" they sustained "originated from," was "incident to" or "had a connection with" Tzumi's disparagement of competing products and producers.

36.     The injury alleged in the Talley Action potentially "arises out of" offense (d).

### Element Two – "Oral or Written Publication of Material" Is Alleged

37.     The Talley Action alleges that Tzumi made false or misleading statements of fact in its advertisements and on its labels.

38.     The Talley Action allegations create the reasonable inference that Tzumi published disparaging statements about its competitors to retailers and consumers. The alleged "injury" was one "arising out of" "publication of material" by Tzumi, according to the allegations of the SAC in that the express "advertisement" literature it disseminated on the internet and in merchandise displays through major retailers created the asserted liability according to the allegations of the SAC that:

19. TZUMI manufactures, markets, and distributes for sale **nationwide, including through major retailers such as Walmart and Amazon**, a number of models of Power Banks. It does so by **prominently representing that the Products have a certain mAh**. Unfortunately for consumers, testing has shown the amount of mAh the Products actually have is substantially lower than what TZUMI represents.

. . .

23. TZUMI draws attention to its Products' mAh by placing the mAh rating right next to the name of the Products, and by **prominently displaying the mAh rating on advertising materials and the product package**.

**Exhibit "3"** (all emphasis added); see also **Exhibit "2", ¶¶** 19, 23.

39.     Thus, Tzumi's widespread publication of materials on websites and on labels of its products is expressly alleged in the SAC. The disparaging nature of these statements in fully explained in the section below.

**Element Three – "Disparages a Person's or Organization's Goods, Products or Services" Is Alleged**

40.     "Disparagement" coverage under offense (d) provides coverage for "damages because of . . . injury . . . arising out of . . . oral, written or electronic publication of material that . . . **disparages** a person's or organization's goods, products or services." (emphasis added).

41.     Here, damage flowed from falsely asserted negative comparative statements that denigrated competitors' products and injured the Claimants as consumers under the provision of Cal. Civ. Code § 1770(a)(8).

42.     Tzumi's portable power bank products enjoyed commercial success because they appeared to have more charging power for PEDs at lower prices than competing products, meeting the definition of disparagement as it evidences that Tzumi's misleading marketing tactics caused consumers to purchase Tzumi products over those of competitors.

43.     Consumers chose Tzumi over competitors because Tzumi's misleading statements discredited competitors by painting those competing products as overpriced, as evidenced by the Claimants' assertion that the pricing of Tzumi's power products made them

appear much more affordable than competitors' similar products.

44.    The definition is additionally met by the unfair competition claims explicitly asserted throughout the SAC since an unfair competition claim can potentially include disparagement. As just one example, **Exhibit "3", ¶** 98 states that "TZUMI's practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least [a variety of state statutes]." See also **Exhibit "2", ¶** 97.

45.    The alleged promotion of Tzumi's power bank products providing more charging power for PEDs while being sold at lower prices than competing products constitutes disparagement of competitors' products which allegedly damaged competitors and consumers.

46.    The allegations in the Talley Action establish the factual basis for coverage under Burlington's "disparagement" Policy offense. Because unfair competition claims potentially include disparagement, the SAC also contains a cause of action that can satisfy the requirements of offense (d).

47.    To the extent there is any *factual* dispute about what occurred that would evidence disparagement, that possibility alone triggers a duty to defend.

### ALLEGATIONS OF USING ANOTHER'S ADVERTISING IDEA ESTABLISH A POTENTIAL FOR COVERAGE UNDER POLICY OFFENSE (f)

#### A Six-Element Test Applies to This Offense

48.    The test for "Personal and advertising injury" offense (f) contains six elements: (1) "injury . . . arising out of;" (2) the "use;" (3) of "another's;" (4) "advertising idea;" (5) "in your;" and (6) "'advertisement.'" Further, as with the "disparagement" offense,

49.    The Policy does not define the terms "advertising" or "advertising idea."

50.    The Policy defines "Advertisement," in pertinent part, as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

51.    Each element of the offense is met by the allegations contained in the Complaint and the SAC.

**Element One – "Injury Arising out of" Offense (f) Is Alleged**

52.     The complaint allegations include that Tzumi allegedly "advertises its Products as delivering more mAh than its products are able to provide." **Exhibit "3",** ¶ 10; see also **Exhibit "2",** ¶ 10. Tzumi allegedly "markets" its products by "prominently displaying that the Products have a certain mAh" but "the amount of mAh the Products actually have is substantially lower." **Exhibit "3",** ¶ 19; see also **Exhibit "2",** ¶ 19. This allegedly misleading marketing strategy was employed to "take away market share from competing products, thereby increasing [Tzumi's] own sales and profits." **Exhibit "3",** ¶ 20; see also **Exhibit "2",** ¶ 20.

53.     Resulting injury is alleged by the assertion that customers "would not have purchased the Product, or would have paid less, had they known the truth about its mAh." **Exhibit "3",** ¶ 38; see also **Exhibit "2",** ¶ 37. This allegation demonstrates that the injury "originat[ed] from" or "ha[s] connection with" Tzumi's decision to market its power banks based on the internal battery mAh capacity rather than the deliverable charge, satisfying the definition of "arising out of" under New York law.  This is the "use of another's advertising idea in [Tzumi's] 'advertisement'" at issue in this case. Therefore, "injury . . . ar[ose] from" Tzumi's offense (f) activity, creating a duty to defend.

**Element Two – An "Advertising Idea" Is Alleged**

54.     The Policy does not define the term "advertising idea." However, a reasonable insured in Tzumi's position would understand the term to have its plain and ordinary meaning generally encompassing "the manner in which one advertises its goods."

55.     Here, the SAC alleges that Tzumi "deceive[d] consumers by misrepresenting the amount of power its Products can transfer to PEDs. TZUMI advertises its Products as delivering more mAh than its Products are able to provide." **Exhibit "3",** ¶ 10; see also **Exhibit "2",** ¶ 10.

56.     The "advertising idea" in this case is Tzumi's allegedly misleading use of the internal battery capacity rather than the deliverable charge to PEDs. **Exhibit "3",** ¶ 27; see also **Exhibit "2",** ¶ 26. The SAC specifically alleges that:

27. To convert and distribute power from the Products to the PEDs, **the Products use power from their own internal batteries**. Running the internal circuit board and converting power for charging PEDs is a process that uses as much as 30-40% of the internal cells' power. In its July 20th letter (ECF No. 16), **TZUMI admitted that it bases its mAh representations on the capacity of the internal battery cells**, not the Products themselves. TZUMI's Products are therefore **incapable of delivering the full advertised mAh** to recharge a consumer's PED.

**Exhibit "3"** (all emphasis added); see also **Exhibit "2", ¶ 26**.

57.     This conclusion is supported by the SAC's allegations that "[c]onsumers do not buy power banks for intangible factors . . . . The main point of buying a power bank is to have the ability to get more power." **Exhibit "3", ¶** 6; see also **Exhibit "2", ¶** 6. The SAC also asserts that "[t]echnology companies are aware of this. One such company is TZUMI." **Exhibit "3", ¶** 8; see also **Exhibit "2", ¶** 8.

58.     Thus, the advertisement of greater mAh capacity is the primary means by which Tzumi is able to speak to the desires of customers and convince them to purchase its products.

59.     The allegedly false promises of greater power delivery to devices is therefore the primary "manner in which [Tzumi] advertises its goods," thereby satisfying New York law's understanding of what constitutes an "advertising idea."

**Element Three – of "Another's" Is Alleged**

60.     The Policy does not define the policy term "another's." However, a reasonable insured in Tzumi's position would understand the term to mean something that originates with someone other than the insured.

*61.*     The SAC asserts that "consumers are willing to pay more for power banks with a higher mAh" and that "[t]echnology companies are aware of this." **Exhibit "3", ¶¶** 7, 8; see also **Exhibit "2", ¶¶** 7, 8. Other companies have used the equivalent or similar advertising idea **before** Tzumi, as seen in *Burgos v. Sunvalleytek Int'l, Inc.*, No. 18-cv-06910-HSG, 2020 U.S. Dist. LEXIS 233611, *2–3 (N.D. Cal. Dec. 11, 2020). There, plaintiffs "contend[ed] that it is misleading and deceptive to label a Power Bank with a specific mAh when it is only the

internal battery cells that have that mAh capacity."

*62.*    This is the misleading marketing strategy allegedly employed by Tzumi—advertising mAh capacity based on the "internal circuitry rather than deliverable charge."

63.    As demonstrated by the *Burgos* case featuring another power bank manufacturer promoting its products based on the internal mAh capacity rather than deliverable charge, the advertising idea employed by Tzumi did not originate with Tzumi. There, as in the Talley Action, the plaintiffs "contend[ed] that it is misleading and deceptive to label a Power Bank with a specific mAh when it is only the internal battery cells that have that mAh capacity." *Burgos*, 2020 U.S. Dist. LEXIS 233611 at \*2–3. A copy of the *Burgos* Complaint is attached as **Exhibit "4,"** and it explicitly alleges in paragraph 12 that the power bank manufacturer's use of the "advertising idea" at issue here (marketing based on the "internal battery capacity rather than deliverable charge") was ongoing in 2016.

64.    The allegations of the SAC assert that Tzumi engaged in its advertising mAh capacity based on the "internal circuitry rather than deliverable charge" no earlier than 2017. **Exhibit "3",** ¶ 33; see also **Exhibit "2",** ¶ 32.

65.    Because another company's use of the idea predates Tzumi's own, the advertising idea at issue is not Tzumi's and is properly described as "another's" because it was first used by a distinct entity in the marketplace, satisfying this element.

66.    The Policy language contains no requirement that the claimant own or seek to enforce its own rights in the "advertising idea" for the "of another" provision to be satisfied. Had Burlington meant "of another" to refer only to "of an underlying claimant," it could have said so in its policy.

67.    When read in context, the phrase "use of another's advertising idea" has multiple reasonable meanings. Consistent with dictionary definitions, "of another" can mean "a different one." The Policy's language does not inform the average lay policyholder that "of another's" means only "of an underlying claimant that may sue you one day."

### Element Four – "Use" Is Alleged

68.     The Policy does not define the policy term "use." In the context of offense (f), the term "use" is not limited to the legal concept of "misappropriation" and instead embraces the broader layman concept of "misuse."

69.     A reasonable insured in Tzumi's position would understand the term to mean "put into action or service" or "the act or practice of employing something," as "use" is defined in dictionaries.

70.     The SAC repeatedly alleges that Tzumi "used" the above-described "advertising idea." These instances include the following allegations:

> 8. TZUMI markets and sells a variety of models of power banks . . . . All of the Products are sold **using a prominent and false representation that they have a certain mAh** when in fact they all have less.
>
> 10. TZUMI **advertises its Products as delivering more mAh** than its Products are able to provide.
>
> 11. TZUMI labels the Pocket Juice as having 4,000 mAh: however the Pocket Juice never could and cannot deliver 4,000 mAh.
>
> 19. TZUMI manufactures, markets, and distributes for sale nationwide, including through major retailers such as Walmart and Amazon, a number of models of Power Banks. It does so by **prominently representing that the Products have a certain mAh.** Unfortunately for consumers, testing has shown **the amount of mAh the Products actually have is substantially lower** than what TZUMI represents.
>
> 23. TZUMI draws attention to its Products' mAh by placing the mAh rating right next to the name of the Products, and by **prominently displaying the mAh rating on advertising materials and the product package.**
>
> 27. To convert and distribute power from the Products to the PEDs, the Products use power from their own internal batteries. Running the internal circuit board and converting power for charging PEDs is a process that uses as much as 30-40% of the internal cells' power.  In its July 20th letter (ECF No. 16), TZUMI admitted that it **bases its mAh representations on the capacity of the internal battery cells, not the Products themselves**. TZUMI's Products are therefore incapable of delivering the full advertised mAh to recharge a consumer's PED.

**Exhibit "3"** (all emphasis added); see also **Exhibit "2", ¶¶** 8, 10, 11, 19, 23, 26.

tzumi coverage complaint vs. burlington.docx 10964.003

71.     The SAC alleges Tzumi has promoted its products using misleading mAh capacities based on the internal battery capacity rather than deliverable charge. Each one therefore satisfies the requirement that Tzumi "put into action or service" the "advertising idea" of marketing its power banks based the "internal battery rather than the deliverable charge," which allegedly misled consumers as to the products' mAh capacities. Thus, Tzumi's marketing activities consisted of "the act or practice of employing [the 'advertising idea']," thereby satisfying the "use" element.

### Element Five – "In Your" Is Alleged

72.     The Policy does not define the policy term "in your." However, the Policy reasonably uses the word "your" to refer to the Named Insured, i.e., Tzumi itself. In context, the phrase "in your 'advertisement'" must refer to one of Tzumi's "advertisements."

73.     The SAC alleges that the "advertising idea" that Tzumi's products were capable of delivering more mAh than they actually could was "used" in Tzumi's above-referenced "prominent display[s]" of advertising to its customers. **Exhibit "3",** ¶ 23; see also **Exhibit "2",** ¶ 23.

74.     The "in your" element of the offense is therefore satisfied by the complaint allegations.

### Element Six – "Advertisement" Is Alleged

75.     The Burlington Disclaimer Letter did not provide the Policy's definition of "advertisement." However, the Policy is reasonably understood to intend "advertisement to mean a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters, including notices and material placed on the Internet or on similar electronic means of communications

76.     The SAC includes the allegation that "TZUMI . . . markets . . . through major retailers such as  . . . Amazon" where it "prominently represent[s] that the Products have a certain mAh." **Exhibit "3",** ¶ 19; see also **Exhibit "2",** ¶ 19. Because Amazon is an online marketplace, Tzumi's "prominent representations," **Exhibit "3",** ¶ 19, made there are "material

placed on the Internet," satisfying the above-quoted element a. See also **Exhibit "2", ¶** 19.

77.     The SAC also alleges that "customers prefer and are willing to pay more for power banks with a higher mAh," **Exhibit "3", ¶** 7, and that Tzumi used misleading mAh descriptions "to take away market share from competing products," **Exhibit "3", ¶** 20, so "prominently representing that the Products have a certain mAh," **Exhibit "3", ¶** 19, on the Amazon website means Tzumi's listing is "for the purpose of attracting customers or supporters," See also **Exhibit "2", ¶¶** 7, 19, 20. Therefore, the above-quoted element b. is satisfied.

78.     The SAC also alleges that "TZUMI draws attention to its Products' mAh by placing the mAh rating right next to the name of the Products, and by prominently displaying the mAh rating on **advertising materials** and the product package." **Exhibit "3", ¶** 23 (emphasis added); see also **Exhibit "2", ¶** 23. It can reasonably be inferred that "advertising materials" are "a notice that is . . . published to the general public . . . about your goods, products or services for the purpose of attracting customers or supporters,"

79.     This follows because the SAC alleges that these "advertising materials" were a method by which "TZUMI draws attention," **Exhibit "3", ¶** 23, to its products "to take away market share from competing products," **Exhibit "3", ¶** 20, satisfying the "for the purpose of attracting customers or supporters" requirement, and Tzumi "markets . . . [their products] for sale nationwide," **Exhibit "3", ¶** 19, satisfying the "notice that is . . . published to the general public" requirement. See also **Exhibit "2", ¶¶** 19, 20, 23.

80.     Therefore, every aspect of the Policy's "advertisement" definition is satisfied.

## COUNT 1

### Declaratory Relief – Duty to Defend

81.     Tzumi incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

82.     A valid contract exists between Tzumi and Burlington, namely the Policy.

83.     Tzumi fully performed all of the obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

84.     By selling the Policy, Burlington agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in the Policy.

85.     The complaints in the Talley Action alleged facts potentially implicating "personal and advertising injury" coverage under the Policy, thereby triggering Burlington's obligation to defend Tzumi.

86.     Burlington was required to provide for Tzumi's defense throughout the Talley Action, including reimbursement of any settlement payments.

87.     Burlington has denied that the Talley Action alleged facts potentially implicating coverage under the Policy and it has asserted that exclusions would eliminate any defense duty that otherwise existed.

88.     An actual bona fide controversy exists between Tzumi and Burlington that requires judicial declaration by this Court of the parties' rights and duties under the Policy with respect to: (1) whether Burlington had a duty to defend Tzumi in the Talley Action; and (2) whether Burlington is required to reimburse Tzumi for the defense expenses Tzumi incurred throughout the Talley Action, including settlement payments.

## COUNT 2

### Breach of Contract

89.     Tzumi incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

90.     A valid contract exists between Tzumi and Burlington, namely the Policy.

91.     Tzumi fully performed all of the obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

92.     By selling the Policy, Burlington agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in the Policy.

93.     The complaints in the Talley Action alleged facts potentially implicating

tzumi coverage complaint vs. burlington.docx 10964.003

"personal and advertising injury" coverage under the Policy, thereby triggering Burlington's obligation to defend and indemnify Tzumi.

94.     No exclusions excuse Burlington's failure to defend and indemnify Tzumi in the Talley Action.

95.     Burlington has refused to defend or indemnify Tzumi in the Talley Action, thereby breaching its policy contract.

96.     Burlington is obligated under the Policy to reimburse all defense expenses Tzumi incurred in the Talley Action, including damages, attorneys' fees, and costs, as well as interest.

97.     Burlington breached its duty to defend and indemnify Tzumi in the Talley Action

98.     As a result of that breach, Tzumi has been damaged in an amount to be established at trial including defense attorneys' fees and settlement payments.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tzumi prays for judgment against Defendant Burlington as follows:

1.     A judicial declaration that Burlington had a duty under the Policy to defend Tzumi in the Talley Action.

2.     A judicial declaration that Burlington breached its contractual obligations under the Policy to defend and indemnify Tzumi in the Talley Action.

3.     A judicial declaration that Burlington must reimburse Tzumi for the defense expenses Tzumi incurred throughout the Talley Action, including settlement payments

4.     An award for Tzumi's reasonable attorneys' fees and costs incurred in this lawsuit.

5.     An award for pre-judgment interest at the statutory rate on all defense invoices from the date of each invoice.

6.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Tzumi Electronics LLC demands a trial by jury of all issues so triable.


DATED:  November 23, 2022                    Respectfully submitted,

**GAUNTLETT & ASSOCIATES**                   **THE KILLIAN FIRM, P.C.**
David A. Gauntlett, *pro hac vice pending*
James A. Lowe, *pro hac vice pending*        By:  /s/ Eugene Killian, Jr.
18400 Von Karman, Suite 300                  Eugene Killian, Jr., Esq.  [EK-9972]
Irvine, California  92612                    48 Wall Street, 11th Floor
Telephone:  (949) 553-1010                   New York, NY  10005
Facsimile:  (949) 553-2050                   Telephone:  (212) 618-1409
dag@gauntlettlaw.com                         Facsimile:  (212) 618-1705
jal@gauntlettlaw.com                         ekillian@tkfpc.com
                                                    -and-
                                             555 Route 1 South, Suite 420
                                             Iselin, NJ  08830-3151
                                             Telephone:  (732) 912-2100
                                             Facsimile:  (732) 912-2101
                                             ekillian@tkfpc.com

                    Attorneys for Tzumi Electronics LLC

tzumi coverage complaint vs. burlington.docx 10964.003