**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TZUMI ELECTRONICS LLC, | ) | **Civil Action No.: 1:22-cv-09995-KPF** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Hon. Katherine Polk Failla** |
| THE BURLINGTON INSURANCE | ) | |
| COMPANY, an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF TZUMI ELECTRONICS LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.  BURLINGTON'S OBLIGATION TO DEFEND AND SETTLE TALLEY ACTION.................................................................................. 1

II.  THE TALLEY ACTION ALLEGED ACTIONABLE INDIRECT AND IMPLICIT DISPARAGEMENT ............................................ 2

    A.  Injury Arising out of Disparaging Publications.................................... 2

    B.  Class Members Have Statutory Standing to Assert Liability Based on Injury to Tzumi's Competitors.................................... 3

    C.  Implicit Disparagement Creates a Defense Duty under New York Law........ 3

    D.  Indirect Injury to Competitors Is Actionable by Consumers under Statutes.................................................................... 6

    E.  The Three-Part Test for Indirect Implicit Disparagement .......................... 7

        1.  The Publication Need Only Disparage Another's Products ................. 7

        2.  A Disparaged Party Meets Test for Implied Disparagement............... 8

        3.  Claims "of and Concerning" the Insured Evidence Indirect Injury ................................................................... 9

III.  CONSUMERS INJURED BY CLAIMS COMPETITORS ARE OVERPRICED.................................................................... 9

    A.  "Publication of Material" Is Evident .................................................. 9

    B.  That "Disparages a[n] Organization's . . . Products"....................... 11

    C.  Indirect Injury "Arising out of" Disparagement Is Alleged ................ 11

        1.  The Indirect Injuries Satisfy Cal. Civ. Code 1770(a)(8)................ 11

        2.  New York Law Recognizes Coverage for Implicit Disparagement................................................................ 13

        3.  Competitors Suffered Direct Injury ...................................... 13

        4.  The SAC and Settlement Agreement Demonstrate Indirect Injury ...................................................................... 14

        5.  Settlement Agreement Is "Extrinsic Evidence" Known to Burlington .................................................................. 15

    D.  Comparable Consumer Class Action Suits Have Found the "of and Concerning" Indirect Injury to Claims Are Met ................ 17

| | E. | Burlington's Cited Disparagement Cases Are Distinguishable | 18 |
|---|---|---|---|
| IV. | | **BURLINGTON'S DISCLAIMER OVERBROADLY CONSTRUES EXCLUSIONS** | **19** |
| | A. | "Arising out of" Exclusion Limitation Does Not Withstand Scrutiny | 19 |
| | B. | No Disparagement Claims Fall within the "Knowledge of Falsity" Exclusion | 19 |
| | C. | Negative Comparisons Fall Outside "Failure to Conform" Exclusion | 22 |
| | D. | A "Wrong Price Description" Is Not a Disparagement Allegation | 23 |
| | E. | Disparagement Claims Have No Relationship to Any "Trade Law" Claims | 24 |
| V. | | **CONCLUSION** | **25** |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*,
676 F. Supp. 2d 738 (S.D. Ind. 2009) ........................................................20

*American Home Assur. Co. v. United Space Alliance, LLC*,
378 F.3d 482 (5th Cir. (Tex.) 2004).............................................................20

*Atlanta Pharma AG v. Tera Pharm. USA, Inc.*,
No.04-2355 (JLL), 2010 U.S. Dist. LEXIS 146151 (D.N.J. Jul 15, 2010) ............................15

*Aurafin-OroAmerica, LLC v. Federal Ins. Co.*,
188 F. App'x 565 (9th Cir. (Cal.) 2006) ...................................................9

*Axiom Ins. Managers, LLC v. Capitol Spec. Ins. Corp.*,
876 F. Supp. 2d 1005 (N.D. Ill. (E.D.) 2012) ..................................14, 20

*Bridge Metal Indus., L.L.C. v. Travelers Indemn. Co.*,
812 F. Supp. 2d 527 (S.D.N.Y. 2011), *aff'd on appeal by Bridge Metal Indus.,
LLC v. Travelers Indem. Co.*, 559 F. App'x 15 (2d Cir. (N.Y.) 2014) ..............................19, 21

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) ........................................................7

*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*,
43 F.3d 1119 (7th Cir. (Wis.) 1994) ..........................................................13

*Del Monte Fresh Produce N.A., Inc. v. Transportation Insurance Co.*,
No. Civ.A. 06 C 1658, 2006 U.S. Dist. LEXIS 58986 (N.D. Ill. Aug 8, 2006),
*aff'd*, 500 F.3d 640 (7th Cir. (Ill.) 2007)...................................................13, 14

*Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*,
No. CV-09-1640 (DLI) (VVP), 2012 U.S. Dist. LEXIS 45591 (E.D.N.Y. Mar.
9, 2012), *aff'd*, 09-CV-1640 DLI VVP, 2012 U.S. Dist. LEXIS 45652
(E.D.N.Y. Mar. 30, 2012) ...........................................................4, 5, 23

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
590 F. Supp. 2d 1244 (N.D. Cal. 2008) ...................................................4

*Elite Brands, Inc. v. Pa. Gen. Ins. Co.*,
164 F. App'x 60 (2d Cir. (N.Y.) 2006).......................................................18

*Elizabeth Arden Resort Spas, Inc. v. Bonaventure Hotel Assocs.*,
No. 12-61850-CIV, 2014 U.S. Dist. LEXIS 187316 (S.D. Fla. Nov. 13, 2014) ....................15

*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*,
  96 Civ. 5993 (JSM), 1997 U.S. Dist. LEXIS 8894 (S.D.N.Y. June 24, 1997)........................25

*Fed. Ins. Co. v. Cablevision Sys. Dev. Co.*,
  637 F. Supp. 1568 (E.D.N.Y. 1986) ........................................................................20

*First One Lending Corp. v. Hartford Cas. Ins. Co.*,
  No. SACV 13-01500, 2017 U.S. Dist. LEXIS 36548 (C.D. Cal. Mar. 13,
  2017) ......................................................................................................................6

*Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*,
  No. 14-cv-07354 (JGK), 2016 U.S. Dist. LEXIS 96582 (S.D.N.Y. July 22,
  2016) ....................................................................................................................17

*Gluck v. Executive Risk Indem., Inc.*,
  680 F. Supp. 2d 406 (E.D.N.Y. 2010) ....................................................................19

*Hanover Ins. Co. v. Anova Foods, LLC.*,
  No. 14-00281 HG-RLP, 2016 U.S. Dist. LEXIS 84734 (D. Haw. June 29.
  2016) ......................................................................................................................5

*Hartford Fire Ins. Co. v. Vita Craft Corp.*,
  911 F. Supp. 2d 1164 (D. Kan. 2012) ....................................................8, 9, 17, 18

*High Point Design, LLC v. LM Ins. Corp*,
  911 F.3d 89 (2d Cir. (N.Y.) 2018) ..........................................................................16

*IBM v. Liberty Mut. Ins. Co.*,
  363 F.3d 137 (2d Cir. (N.Y.) 2004) ........................................................................17

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*,
  686 F. Supp. 2d 1005 (N.D. Cal. 2010) ..................................................................23

*Interstate Fire & Cas. Ins. Co. v. First Specialty Ins. Co.*,
  482 F. Supp. 3d 1060 (E.D. Cal. 2020)......................................................................3

*JAR Labs. LLC v. Great Am. E & S Ins. Co.*,
  945 F. Supp. 2d 937 (N.D. Ill. 2013) ..................................................................7, 13

*Knoll Pharm. Co. v. Auto. Ins. Co.*,
  152 F. Supp. 2d 1026 (N.D. Ill. 2001) ......................................................................6

*Lewis v. Mercedes-Benz United States*,
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) ..................................................................19

*Lexington Ins. Co. v. MGA Entm't, Inc.*,
  961 F. Supp. 2d 536 (S.D.N.Y. 2013)........................................................................9

*Lighton Indus. v. Alllied World Nat'l Assurance Co.*,
 348 F. Supp. 3d 167 (E.D.N.Y. 2018) ..................................................................16

*Miller v. Ghirardelli*,
 No. C 12- 04936 LB, 2013 U.S. Dist. LEXIS 49733 (N.D. Cal. Apr. 5, 2013) ...........7, 12, 18

*Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*,
 295 F. Supp. 335 (S.D.N.Y. 2003) ......................................................................13

*Ohio Cas. Ins. Co. v. Cloud Nine, LLC*,
 464 F. Supp. 2d 1161 (D. Utah 2006), *rev'd on other grounds*, 458 F. App'x
 705 (10th Cir. (Utah) 2012) ..............................................................................20

*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*,
 96-CV-0512E(F), 1997 U.S. Dist. LEXIS 20783 (W.D.N.Y. Dec. 30, 1997) ...................4, 11

*Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp., Inc.*,
 No. 8:05CV315, 2007 U.S. Dist. LEXIS 21456 (D. Neb. Mar. 12, 2007) .............................23

*Pension Trust Fund v. Federal Ins. Co.*,
 307 F.3d 944 (9th Cir. (Cal.) 2002) ....................................................................13

*Perma Research & Dev. Co. v. Singer Co.*,
 542 F.2d 111 (2d Cir. (N.Y.) 1976) (Van Graafieland, J., dissenting) ....................................15

*Peter v. Victor Fluid Power, Inc.*,
 831 F.2d. 1191 (3d Cir. (N.J.) 1987) ....................................................................15

*In re Residential Capital, LLC*,
 Nos. 12-12020 (MG), 15-01025 (DSJ), 2022 Bankr. LEXIS 3601 (Bankr.
 S.D.N.Y. Dec. 21, 2022) ....................................................................................15

*Rockwell Int'l Corp. v. United States*,
 549 U.S. 457 (2007) ..........................................................................................15

*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*,
 475 F. App'x 213 (9th Cir. (Az.) 2012) ................................................................23

*Schlather, Stumbar, Parks & Salk, LLP v. OneBeacon Ins. Co.*,
 2011 U.S. Dist. LEXIS 147931 (N.D.N.Y. Dec. 22, 2011) ...........................................19

*St. Paul Mercury Ins. Co. v. Tessera, Inc.*,
 624 F. App'x 535 (9th Cir. (Cal.) 2015) .................................................................9

*Stein v. N. Assurance Co. of Am.*,
 495 F. App'x 108 (2d Cir. 2012) ..........................................................................17

*Stratford Homes, Inc. v. Lorusso*,
 No. 94-CV-0517E (M) 1995 U.S. Dist. LEXIS 19597 (W.D.N.Y. Dec. 29,
 1995) ......................................................................................................................17

*Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*,
 No. C 12-05465 WHA, 2013 U.S. Dist. LEXIS 71499 (N.D. Cal. May 20,
 2013) ......................................................................................................................23

*Union Mut. Fire Ins. Co. v. Tejada*,
 2021 U.S. Dist. LEXIS 137766 (S.D.N.Y. July 23, 2021) ....................................16

*Vector Prods. v. Hartford Fire Ins. Co.*,
 397 F.3d 1316 (11th Cir. (Fla.) 2005) ....................................................................5

*Vitamin Energy, LLC v. Evanston Insurance Co.*,
 22 F.4th 386 (3d Cir. (Penn.) 2022) ........................................................21, 22, 24

*Vogelfang v. Riverhead Cnty. Jail*,
 No. 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064 (E.D.N.Y. Apr.
 19, 2012) ................................................................................................................15

*Winklevoss Consultants, Inc. v. Federal Insurance Co.*,
 11 F. Supp. 2d 995 (N.D. Ill. 1998) ..................................................................5, 11

*Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*,
 547 F. Supp. 3d 381 (S.D.N.Y. 2021) ...................................................................3, 8

**State Cases**

*Allstate Ins. Co. v. DiBartolo*,
 618 N.Y.S.2d 828 (App. Div. 1994) ......................................................................20

*Automobile Ins. Co. of Hartford v. Cook*,
 7 N.Y.3d 131 (2006) ................................................................................................4

*C. O. Falter, Inc. v. Crum & Forster Ins. Companies*,
 361 N.Y.S.2d 968 (N.Y. Sup. Ct. 1974) ..................................................................4

*Fitzpatrick v. Am. Honda Motor Co.*,
 78 N.Y.2d 61 (1991) .....................................................................................3, 11, 16

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*
 210 Cal. App. 4th 915 (2012) ..................................................................................5

*JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*,
 36 A.D.3d 555 (N.Y. App. Div. 2007) ...................................................................18

*Julie Research Labs., Inc. v. Gen. Resistance, Inc.*,
  268 N.Y.S.2d 187 (App. Div. 1966) ..................................................................18

*Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*,
  959 N.Y.S.2d 204 (N.Y. App. Div. 2013) ...........................................................4, 5

*PG Ins. Co. of NY v. S.A. Mfg. Co., Inc.*,
  674 N.Y.S.2d 199 (App. Div. 1998) ..................................................................20

*Sprint Lumber, Inc. v. Union Ins. Co.*,
  627 S.W.3d 96 (Mo. Ct. App. 2021) ...............................................................24, 25

*St. Paul Ins. Co. v. Landau, Omahana & Kopka, Ltd.*,
  619 N.E.2d 1266 (Ill. App. Ct. 1993) ...............................................................21

*State Farm Gen. Ins. Co. v. Mintarsih*,
  175 Cal. App. 4th 274 (2009) .............................................................................9

*Syvertsen v. Great Am. Ins. Co.*,
  700 N.Y.S.2d 289 (N.Y. App. Div. 1999) ............................................................4

*Terra Nova Ins. Co. v. Fray-Witzer*,
  869 N.E.2d 565 (Mass. 2007) ............................................................................10

*Tower Nat'l Ins. Co. v. Nat'l Bus. Capital, Inc.*,
  NY Slip Op 31985(U) .........................................................................................10

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*,
  98 N.Y.2d 435 (N.Y. 2002) ................................................................................20

*Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.*,
  207 Cal. App. 4th 969 (2012) ............................................................................13

*Virtual Bus. Enterprises, LLC v. Maryland Cas. Co.*,
  No. CIVA07C12070MMJ, 2010 Del. Super. LEXIS 141 (Del. Super. Apr. 9,
  2010) *appeal refused*, 994 A.2d 744 (Del. 2010) ...........................................9, 12

*Welch Foods, Inc. v. Liberty Mut. Fire Ins. Co.*,
  No. 00-1249A, 2005 Mass. Super. LEXIS 178 (Mass. Super. Ct. 2005) ..............12

## Federal Statutes

15 U.S.C. § 1114(1) ..............................................................................................20

15 U.S.C. § 1125(a) ..............................................................................................20

## State Statutes

815 ILCS 510/2 .....................................................................................................13

Cal. Civ. Code § 1761(d) ...............................................................................................7

Cal. Civ. Code § 1770(a)(8)..............................................3, 6, 7, 9, 11, 12, 14, 18, 19

Delaware Deceptive Trade Practices Act .....................................................................12

Fla. Stat. § 501.204(1)..................................................................................................19

Utah Code Ann. § 13–11a–3.........................................................................................20

**Rules**

Federal Rules of Civil Procedure Rule 16(e) ...............................................................15

**Other Authorities**

Appleman on Insurance Law .........................................................................................11

Donald S. Malecki and Arthur L. Flitner, *Commercial General Liability* 73–74
    (2d ed. 1986) ..........................................................................................................11

## I.      BURLINGTON'S OBLIGATION TO DEFEND AND SETTLE TALLEY ACTION

The Burlington Insurance Company ("Burlington") owed Tzumi Electronics LLC ("Tzumi") a defense under its Policy for the "personal and advertising injury" offense (d) "disparagement" claims in the underlying suit styled as *Talley v. Tzumi Electronics LLC*, Case No. 1:20-cv-04074-VM in the United States District Court of the Southern District of New York (the "Talley Action"), filed on May 27, 2020. [SMF 9]

Tzumi purchased a Burlington Commercial General Liability policy (No. 0895CAP0009761) ("the Policy") for the period of December 19, 2017 to December 19, 2018. [SMF 1][1] Tzumi paid all policy premiums and otherwise fully discharged all its obligations to Burlington. [SMF 2] This coverage suit results from Burlington's denial of a defense to Tzumi in the Talley Action. The Talley Action's Second Amended Complaint ("SAC") alleged that Tzumi marketed its products with misleading information. [SMF 12] Namely, Tzumi advertised its power banks in a manner suggesting they possessed a greater charging capacity than they actually had. [SMF 12] As clarified in the Settlement Agreement, which is "extrinsic" evidence known to Burlington prior to its denial of a defense, these publications disparaged Tzumi's competitors.[2] [SMF 21] By promoting its products in this manner, "the pricing of Tzumi's power products made them appear much more affordable than competitors' similar products that are not claimed to be deceptively labeled." [SMF 21]

The SAC explicitly alleges "unlawful, unjust, unfair, and deceptive practices in misrepresenting the mAh of [Tzumi's] Products and violating state law during the applicable statute of limitations period[,]" [SMF 13]. The SAC included images of Tzumi products displaying mAh ratings on the packaging. [SMF 14] It further alleges that: "After purchasing the Pocket Juice 4000, Ms. Talley and Ms. Ervin were disappointed to find they were forced to recharge the Pocket Juice 4000 more often than they expected. Ms. Talley and Ms. Ervin, like

---

[1] Statement of Material Facts in Support of Motion for Partial Summary Judgment ("SMF").

[2] See Section III.C.4 of this memorandum.

291772_8.doc-7/28/2023 9:09 AM

1

any reasonable consumer and member of the putative classes, would not have purchased the Product, or would have paid less, had they known the truth about its mAh."[3] [SMF 15]

Based on the Policy language covering the allegations in the Talley Action, before August 27, 2019 Tzumi notified Burlington of that claim, submitting a notice of loss. [SMF 7] On August 27, 2019 Burlington denied defense coverage asserting that the claimants' allegations did not constitute an enumerated offense within the 'personal and advertising injury' coverage of the Policy. [SMF 8] Burlington also asserted four exclusions as barring a defense: (1) Material Published With Knowledge of Falsity, (2) Quality or Performance of Goods-Failure to Conform to Statements, (3) Wrong Description of Prices, and (4) Recording and Distribution of Material or Information in Violation of Law. [SMF 17]

Tzumi's insurance coverage counsel sent a July 20, 2022 letter notifying Burlington of a proposed Settlement Agreement in the Talley Action, including a copy of the proposed agreement, requesting Burlington reconsider its denial of coverage. [SMF 16] Tzumi asked Burlington to reevaluate its defense and settlement obligations and agree that the proposed Settlement Agreement was reasonable and within its defense and settlement duties owed in the Talley Action. [SMF 16]. Burlington again denied coverage on August 10, 2022 despite the allegation clarifications provided by the proposed Settlement Agreement; Burlington reasserted the same grounds for denial of coverage. [SMF 17]

Tzumi agreed to settlement of the Talley Action on August 30, 2022. [SMF 20] The Settlement Agreement required a $225,000 settlement payment. [SMF 22] Tzumi has received no reimbursement from Burlington of the expenses incurred in defending itself in the Talley Action or the sums paid to settle that action. [SMF 23]

## II.   THE TALLEY ACTION ALLEGED ACTIONABLE INDIRECT AND IMPLICIT DISPARAGEMENT

### A.   Injury Arising out of Disparaging Publications

---

[3] These claims that Tzumi misstated its products' performance compared to competitors' triggered disparagement coverage under offense (d) cognizable under Burlington's policy language due to claimants' standing to sue for injury suffered from Tzumi's publications allegedly disparaging competitors' products.

The Policy language covers claims for "damages because of 'personal injury' or 'advertising injury,'" where "personal and advertising injury" is defined as "injury . . . arising out of . . . oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services." [SMF 3–4] The disparagement of competitors goods indirectly injures consumers, i.e. the Talley class and creates a potential for coverage that triggers policy benefits. The alleged indirect injury triggers liability under the Talley Action's statutory schemes implicating a defense under the applicable policy language. [SMF 3, 12]

### B.     Class Members Have Statutory Standing to Assert Liability Based on Injury to Tzumi's Competitors

Critically, the Talley Action included claims for violations of Cal. Civ. Code §1770(a)(8) and analogous statutes under the laws of Illinois, Michigan, and Texas. [SMF 12] This statutory provision permits consumer actions for injuries where competitors were rendered less favorably positioned to sell their products to those consumers because of alleged advertising misstatements, as here. [SMF 12] Such claims implicated a defense under offense (d) of Burlington's policy "Oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products, or services" [SMF 4], because the statute provision provides standing to consumers to seek damages for the indirect injury they suffered as a result of the direct injury to competitors.[4]

### C.     Implicit Disparagement Creates a Defense Duty under New York Law

Potential insurance coverage does not require that disparagement be expressly alleged.[5] Although Burlington could have written policy language limiting "disparagement" to specific

---

[4] Cal. Civ. Code § 1770(a)(8) ("The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: . . . **Disparaging the goods, services, or business of another by false or misleading representation of fact**.") (emphasis added).

[5] *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 399 (S.D.N.Y. 2021) (*quoting Fitzpatrick v. Am. Honda Motor Co., Inc.*, 575 N.E.2d 90, 92, 94, (N.Y. 1991) ("'[A]n insured's right to a defense [does] not depend solely on the allegations a third party chooses to put in the complaint . . . Courts applying New York law thus frequently extend the duty to defend to cases where the insured is not named in the underlying action as a party defendant.'")); *see also Interstate Fire & Cas. Ins. Co. v. First Specialty Ins. Co.*, 482 F. Supp. 3d 1060, 1077–78 (E.D. Cal. 2020) (Applying California law, which allows use of extrinsic evidence, and concluding that a subcontractor agreement provided facts supplementing the underlying complaint that compelled a duty to defend.)

torts like "trade libel" or "product disparagement," Burlington did not.[6] So no specific tort or express allegation of disparagement is required by the Policy.[7] The underlying suit is not required to specifically allege a "disparagement" cause of action to create potential coverage for implied disparagement.[8]

Disparagement can be found based on mere inferences so long as they are reasonably derived from the facts pled, as a federal district court in New York[9] concluded, citing California law which is consistent with New York law.[10] Competing products may be disparaged by implication, as here. Courts have readily found that false advertising fact allegations may assert disparagement, requiring a defense, even without explicit statements disparaging a competitor.[11]

*Natural Organics, Inc. v. OneBeacon American Insurance Co.*[12] addressed allegations of wrongful termination of an exclusive distributorship agreement and resulting consumer confusion based on a press release issued by Natural Organics. It stated that "HON was its

---

[6] *C. O. Falter, Inc. v. Crum & Forster Ins. Companies,* 361 N.Y.S.2d 968, 973 (N.Y. Sup. Ct. 1974) ("If there is any doubt as to whether the charges against an insured state a claim within the coverage of the policy, such doubt will always be resolved in favor of the insured.").

[7] *PCB Piezotronics, Inc. v. Kistler Instrument Corp.,* 96-CV-0512E(F), 1997 U.S. Dist. LEXIS 20783, *9 (W.D.N.Y. Dec. 30, 1997) (holding that the policy's "disparagement" offense has no "specialized legal meaning" and should be construed according to its dictionary definition, or "ordinary meaning").

[8] *Automobile Ins. Co. of Hartford v. Cook,* 7 N.Y.3d 131, 137 (2006) ("[I]nsurer will be called upon to provide a defense whenever the allegations of the complaint '**suggest . . . a reasonable possibility of coverage**.'" (emphasis added)).

[9] *Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.,* No. CV-09-1640 (DLI) (VVP), 2012 U.S. Dist. LEXIS 45591, *24 (E.D.N.Y. Mar. 9, 2012), *aff'd,* 09-CV-1640 DLI VVP, 2012 U.S. Dist. LEXIS 45652 (E.D.N.Y. Mar. 30, 2012) ("This does not necessarily mean that the competitor's product must be identified by name and it may be enough that there be some identifying statement that compares the advertised product to those sold by competitors. *See, e.g. Acme,* 214 Fed. Appx. at 599-600 (advertisements stating that insured's titanium products were 'sharper, more durable, and longer lasting' drew sufficient comparison to plaintiff's steel products).") .

[10] *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co*., 590 F. Supp. 2d 1244, 1249, 1253 (N.D. Cal. 2008) (advertisement asserting that insured was the "'only" producer of "all Java" and "fully J2EE" software solutions' and that this 'was an "important differentiator" between competing products' disparaged insured's competitors by 'clear implication'), *reconsideration denied sub nom. Infor Global Solutions (Michigan), Inc. v. St. Paul Fire and Marine Insurance Co.*, 686 F. Supp. 2d 1005 (N.D. Cal. 2010) (finding that the *Total Call* decision was not so inconsistent with *E.piphany* to constitute a material change in the law).").

[11] *Syvertsen v. Great Am. Ins. Co.,* 700 N.Y.S.2d 289, 291–92 (N.Y. App. Div. 1999) ("A party's characterization of the causes of action alleged … are not controlling . . . we . . . determine the nature of the claims based upon the facts alleged and not the conclusions which the pleader draws therefrom.") (internal quotations omitted).

[12] *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204, 207 (N.Y. App. Div. 2013).

exclusive distributor in the Nordic region, detracting from NPN's [underlying plaintiff] reputational goodwill and trade." *Id.* The court held the allegations "fall within the policy's coverage for . . . disparagement. The statement that HON had been appointed the exclusive distributor of [Natural Organic's] products . . . could imply that NPN's inventory . . . was unauthorized." *Id.*

*Natural Organics* is indistinguishable from the seminal *E.piphany* decision.[13] It analyzed press statements that asserted E.piphany's unique ability to offer certain services, thus implying that an unnamed competitor was unable to provide the same services. The only distinction between E.piphany and Natural Organics is that Natural Organics was the third party whose services competitors, HON and NPN, sought to align themselves with instead of statements against a direct competitor. In both cases, the implicitly disparaged competitor was harmed.

Courts have recognized that implied disparagement does not require a particular competitor to be named in the allegedly disparaging statement unless the policy specifies such a requirement.[14] Disparagement may be by implication and does not require the insured to name a competitor.[15] The instant policy's disparagement coverage under offense (d) contains no such requirement.[16] [SMF 4, 5] The ambiguity must be resolved in favor of Tzumi to find coverage. The same conclusion was reached in *Winklevoss Consultants, Inc. v. Federal Insurance Co.*,[17] as

---

[13] Referenced in *Dollar Phone* (*see* n.5) and cited favorably by the California Supreme Court in *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*[13] 210 Cal. App. 4th 915, 927 (2012) ("Thus the Sigma complaint alleged that **E.piphany's false claims about the superiority of its own products necessarily implied the inferiority of Sigma's competing products**. *E.piphany, Inc.*, held that the Sigma complaint contained disparagement allegations potentially covered by the insurer's policy and thus triggered the insurer's duty to defend." (internal citations omitted) (emphasis added).

[14] *Vector Prods. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. (Fla.) 2005) ("Because the Policies are ambiguous as to whether the insured must mention a plaintiff's name in an advertisement in order to give rise to a duty to defend a false advertising claim, we resolve the ambiguity in favor of the insured and hold that the claims in the Schumacher complaint do give rise to the duty to defend, subject to the application of the exclusions.").

[15] *Hanover Ins. Co. v. Anova Food, LLC*, No. 14-00281 HG-RLP, 2016 U.S. Dist. LEXIS 84734, *24 (D. Haw. June 29, 2016) (applying Florida law) ("It is enough for the insured to compare its product or service to its competitor's product or service in order to detract from the reputation of its competitor. . . . Disparagement can also result from false comparisons between products in which the comparison dishonors the product being compared.").

[16] The Policy provides coverage for "'[p]ersonal and advertising injury . . . arising out of . . . oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services."

[17] *Winklevoss Consultants, Inc. v. Federal Insurance Co.*, 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998) ("The claims that Winklevoss falsely advertised in its promotional materials that its software was capable of 'allow[ing]

well as an earlier case recognizing the insured's right to a defense, even though it was not accused of directly disparaging solely the party suing it.[18]

The SAC asserts that the actual mAh capacities were "substantially lower than what TZUMI represents" and that "consumers prefer and are willing to pay more for power bank with a higher mAh." [SMF 12] Tzumi's alleged assertion that it could provide a particular mAh at a particular price point implicitly alleged the inferiority of competing products that failed to provide that same value since the mAh is alleged to be the only important metric for judging the quality of a power bank.[19] These fact allegations (clarified by the Settlement Agreement, which courts have acknowledged as a form of "extrinsic evidence") evidencing implicit disparagement based on Tzumi's allegedly "false comparative statements" about its products features "relative to competitors'" are more direct than those deemed sufficient in a similar action.[20]

### D.  Indirect Injury to Competitors Is Actionable by Consumers under Statutes

California Civil Code § 1770(a)(8) ("Cal. Civ. Code § 1770(a)(8)") confers standing on the claimants to assert indirect injury where it was caused by direct injury to a competitor

---

senior actuaries to be "hands on" with respect to consulting assignments,' but Lynchval's software was not; that **Winklevoss made false comparative statements about the speed of its software relative to competitors**; and the specific allegation that Winklevoss made misleading statements about the nature of both parties' products all satisfy the above laymen's definition of 'disparage.'") (emphasis added).

[18] *Knoll Pharm. Co. v. Auto. Ins. Co.*, 152 F. Supp. 2d 1026, 1035 (N.D. Ill. 2001) ("**Furthermore, giving the term 'arising out of' full meaning and effect, the identity of the person or organization directly slandered, libeled or disparaged must not be restricted to the class of underlying plaintiffs.** By employing broad definitions of the other terms in the policies issued by Defendant Insurers, an 'offense' of libel, slander or disparagement may be alleged in the underlying litigation **though the underlying plaintiffs are not the direct victims of the offenses.** Therefore, the policy language does not entail that the insured must have slandered, libeled or disparaged the underlying plaintiffs, and, accordingly, we conclude that such language does not preclude Knoll from stating a claim that Defendant Insurers owe a duty to defend.") (emphasis added).

[19] SMF 12 ("Power banks are not fashion items or status symbols. Consumers do not buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not usually serviced or repaired once sold; there is no significant relationship between the consumer and the company after purchase. **The main point of buying a power bank is to have the ability to get more power.**") (emphasis added).

[20] *First One Lending Corp. v. Hartford Cas. Ins. Co.,* No. SACV 13-01500, 2017 U.S. Dist. LEXIS 36548, *8 (C.D. Cal. Mar. 13, 2017) (Concluding disparagement was asserted "because Plaintiffs gave people the false impression that NACA wasn't free of charge and made people believe that NACA was being deceptive. **Further, in their settlement agreement with Plaintiffs, NACA again states that Plaintiffs 'made false and disparaging statements about NACA's services' and that 'as a result of' those statements, NACA 'suffered damages to its reputation and goodwill.'"**) (emphasis added).

through disparagement.[21] *Miller v. Ghirardelli Chocolate Co.*[22] held that standing under Cal. Civ. Code § 1770(a)(8) is readily conferred on a product consumer to allege 'injury arising out of' disparagement of a competitor.

As long as 'damages because of' 'injury arising out of' disparagement under offense (d) are factually asserted, as here, consumers' injury due to disparagement of a competitor is an injury which flows from disparagement. "The CLRA permits 'consumers' to file suit pursuant to Cal. Civ. Code § 1770, and further defines a 'consumer' to be 'an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes. *See* Cal. Civ. Code § 1761(d)[.]'"[23] Moreover, to the extent these allegations are deemed equivocal, that suffices to evidence a basis for potential coverage for disparagement.[24]

### E.    The Three-Part Test for Indirect Implicit Disparagement

#### 1.    The Publication Need Only Disparage Another's Products

Burlington's policy provides coverage for "'[p]ersonal and advertising injury' . . . arising out of . . . [o]ral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products, or services." [SMF 5] Consequently, there are three elements

---

[21] Cal. Civ. Code § 1770(a)(8) ("The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: . . . Disparaging the goods, services, or business of another by false or misleading representation of fact.")

[22] *Miller v. Ghirardelli*, No. C 12- 04936 LB, 2013 U.S. Dist. LEXIS 49733, at *5, 15 (N.D. Cal. Apr. 5, 2013) (ruling plaintiff had standing for § 1770(a)(8) claim after purchasing products marketed with claims that "customers can taste the Ghirardelli difference due to the following:

   1. Intensive quality assurance in the selection of cocoa beans means that Ghirardelli accepts only the highest-quality beans. . . .

   2. In all of its chocolate products, Ghirardelli uses a proprietary blend of cocoa beans that has been refined over the company's 160-year history to provide the company's distinct and intense chocolate taste.

   3. Ghirardelli roasts the cocoa beans in-house to ensure the company's signature flavor profile is consistently maintained in all chocolate products. . . .

   4. Finally, Ghirardelli uses an intensive refining process to ensure that its chocolate truly melts in your mouth! . . .") (internal quotation marks omitted).

[23] *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).

[24] *JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 944 (N.D. Ill. 2013) ("[A] statement equating a competitor's product with an allegedly inferior one is logically indistinguishable from, and no less disparaging than, a statement describing one's own product as 'superior' to the competitors.").

that must be satisfied to confer coverage: (1) "publication of material," (2) "[that] disparages a person's or organization's goods, products, or services," and (3) "injury arising out of" that published disparagement. In order to satisfy the test, however, those elements need not be explicitly alleged. Only the factual basis creating the *potential* for the elements must be present.[25]

### 2. A Disparaged Party Meets Test for Implied Disparagement

In *Hartford Fire Insurance Co. v. Vita Craft Corp.*,[26] as here, the underlying complaint did not contain separate counts which sought recovery for libel, slander, or disparagement of goods, products, and/or services. The insurer claimed that the suit was one limited to common law unfair competition counts "based on customer confusion as to TSI goods and services, not false statements about TSI customers," despite the incorporation of allegations that Vita Craft and Imura engaged in a scheme to damage and injure TSI by spreading false rumors regarding one of TSI's licensees.[27] Rejecting Hartford's argument, the court observed:

> Hartford's argument, however, overlooks the fact that its policies define "personal and advertising injury" to include injury *arising out of* "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service."[28]

Because the Policy language broadly extends coverage to claims "arising out of" disparagement, it necessarily tracks and encompasses an alleged disparager's expanded scope of potential liability for disparagement under Cal. Civ. Code 1770(a)(8). *Vita Craft's* analysis of the applicable policy herein is on point. As that court explained:

> **The policies did not limit libel or slander coverage to claims by persons claiming to have been directly slandered or libeled**, as opposed to persons claiming to have suffered by virtue of slander or libel of their licensees. *See* Ex. A (coverage for publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services). Construed in favor of the insured, as Kansas law requires, the policy

---

[25] *See Zurich*, 547 F. Supp. 3d at 399.

[26] *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164 (D. Kan. 2012).

[27] *Id.* at 1170, 1174.

[28] *Id.* at 1178 (emphasis in original).

potentially covered injury to the underlying plaintiff for defamation or disparagement of a third party.[29]

While the underlying plaintiff in *Vita Craft* alleged injury due to rumors about its licensee, those allegations are analytically the same as the circumstances here. In both, "injury arises out of . . . publication of material . . . that disparages an organization's . . . products."

Burlington's denial of a defense failed to evaluate potential coverage for disparagement in light of the statutory provision—Cal. Civ. Code § 1770(a)(8)—which confers standing to sue on a purchaser of the insured's product, based on the purchaser's right to sue for representations that disparaged Tzumi's competitors' products as overpriced and of lesser quality.[30] So understood, this case is directly analogous to *Aurafin-OroAmerica, LLC v. Federal Ins. Co.*[31] Indeed, any factual dispute compels recognition of a defense.[32]

### 3.      Claims "of and Concerning" the Insured Evidence Indirect Injury

In *Vita Craft*, the insurer argued that the "bare bone allegation" that Vita Craft and Imura were "spreading false rumors" about a TSI licensee was too vague and conclusory to constitute a claim for disparagement, as such statements do not constitute allegations that TSI suffered injury due to such claims, they did not withstand scrutiny. That court disagreed.[33]

## III.      CONSUMERS INJURED BY CLAIMS COMPETITORS ARE OVERPRICED

### A.      "Publication of Material" Is Evident

---

[29] *Id.* at 1179 (emphasis added).

[30] *St. Paul Mercury Ins. Co. v. Tessera, Inc.,* 624 F. App'x 535, 536 (9th Cir. (Cal.) 2015) ("[I]t is not the insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim that is not meritorious.").

[31] *Aurafin-OroAmerica, LLC v. Federal Ins. Co.,* 188 F. App'x 565, 566 (9th Cir. (Cal.) 2006) ("To the extent that the district court found that D & W's counterclaims alleged each element of libel, but that the facts did not support a libel claim as a matter of law, the district court applied the wrong legal standard and impermissibly considered the merits of the libel claim.").

[32] *Lexington Ins. Co. v. MGA Entm't, Inc.,* 961 F. Supp. 2d 536, 558 (S.D.N.Y. 2013) ("'[A]ny factual dispute affecting the existence of [insurance] coverage creates the potential for coverage and a duty to defend[.]'") (*quoting State Farm Gen. Ins. Co. v. Mintarsih,* 175 Cal. App. 4th 274, 284, n.6 (2009)).

[33] *Vita Craft,* 911 F. Supp. 2d at 1178–79 ("Although sparse, the complaint alleges that Vita Craft and Imura 'engaged in and orchestrated a scheme to damage and injure TSI by spreading false rumors regarding one of TSI's licensees.' . . . Though the complaint . . . asserted false and defamatory statements about CookTek, they also asserted that TSI suffered damages on that account because CookTek is a TSI licensee.")

The term "publication" generally refers to the communication of information to a third person.[34] "'[C]ommunication (as of news or information) to the public'" has been held to satisfy the "publication" requirement.[35] Here, Tzumi allegedly "published" disparaging material online, in advertising, on labels, and in retail stores across the country.[36] [SMF 12] Indeed, the SAC includes images of Tzumi's product packaging that prominently display mAh claims. [SMF 12, 13]






---

[34] *Virtual Bus. Enterprises, LLC v. Maryland Cas. Co*., No. CIVA07C12070MMJ, 2010 Del. Super. LEXIS 141, *14–15 (Del. Super. Apr. 9, 2010) appeal refused, 994 A.2d 744 (Del. 2010) ("Courts routinely have held that one party's communication of defamatory statements about a second party to a third party constitutes 'publication.'").

[35] *Tower Nat'l Ins. Co. v. Nat'l Bus. Capital, Inc.*, NY Slip Op 31985(U), *9–10 (Sup. Ct. 2014) (holding that transmission of 10,000 faxes qualified as sufficient communication) (*quoting Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565, 572 (Mass. 2007)).

[36] SAC alleges at ¶ 19, "TZUMI manufactures, markets, and distributes for sale nationwide, including through major retailers such as Walmart and Amazon, a number of models of Power Banks. It does so by prominently representing that the Products have a certain mAh." [SMF 12]

### B.      That "Disparages a[n] Organization's . . . Products"

The SAC allegations evidence a disparagement claim, especially as clarified by the Settlement Agreement. [SMF 21] The SAC plainly asserts that Tzumi disadvantaged its competitors through advertising:

> 10. For profit and **a higher market share**, TZUMI exploits consumers' preferences for power banks with higher mAh….
>
> 20. … Further, TZUMI is incentivized to mislead consumers to **take away market share from competing products**, thereby increasing its own sales and profits. [SMF 12 (emphasis added)]

The policy fails to define "disparage," and New York courts have not assigned a particular meaning.[37] But insurance law treatises have settled upon "a statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy" as a definition in this context.[38] By marketing its products with the misleading labels advertising higher mAh capacities for its devices, Tzumi denigrated its competitors' products as inferior for not delivering the same value. That implied message was "a statement about a competitor's goods which is untrue or misleading" based on reasonable inferences from the claims asserted.[39]

### C.      Indirect Injury "Arising out of" Disparagement Is Alleged

### 1.      The Indirect Injuries Satisfy Cal. Civ. Code 1770(a)(8)

Tzumi is accused of far more than touting its own products' mAh ratings. The Talley Action alleges indirect injury to its class of plaintiffs from disparagement of Tzumi's competitors under California Civil Code §1770(a)(8) and other equivalent statutory schemes. [SMF 12]

---

[37] *PCB Piezotronics,* 96-CV-0512E(F), 1997 U.S. Dist. LEXIS 20783 at *9 (holding that the policy's "disparagement" offense has no "specialized legal meaning" and should be construed according to its dictionary definition, or "ordinary meaning"); *Winklevoss,* 11 F. Supp. 2d at 1000 ("[T]he policy offense of 'disparagement' is not synonymous with common law commercial disparagement.").

[38] 20-131 APPLEMAN ON INSURANCE LAW & PRACTICE ARCHIVE § 131.3, n.212 (2nd 2011) ("An accepted legal definition of disparagement of goods is 'a statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy.'") (*quoting* Donald S. Malecki and Arthur L. Flitner, *Commercial General Liability* 73–74 (2d ed. 1986)).

[39] *Fitzpatrick v. Am. Honda Motor Co.,* 78 N.Y.2d 61, 70 (1991) ("These factors militate in favor of a rule requiring the insurer to provide a defense where, **notwithstanding the complaint allegations,** underlying facts made known to the insurer create a 'reasonable possibility that the insured may be held liable for some act or omission covered by the policy.'") (emphasis added).

The complaint express allegages that Tzumi advertised its products to "best" its competitors, implying they were  price-gougers. The allegations implicate a defense, under offense (d), by asserting Tzumi's misleading mAh ratings were an attack on competitors. [SMF 12][40] Liability from those attacks led to indirect injury to consumers and conferred standing on claimants who could not secure products in a robust competitive marketplace by displacing disparaged competitors who were unable to claim their products as possessing the same mAh capacity or who had to charge higher prices for products that did have equal mAh capacity.[41]

This indirect injury scenario is expressly alleged in the Talley Action, as statutory liability pursuant to Cal. Civ. Code §1770(a)(8) extends to "[d]isparaging the goods, services, or business **of another** by false or misleading representation of fact." (emphasis added). [SMF 12] Tzumi's publications allegedly motivated consumers to pay for Tzumi's power banks' purported ability to deliver more mAh of charge for less money, making its competitors' products appear overpriced and a poor value. This is a classic "disparagement" claim. Two analogous cases illustrate this point.[42]

Similarly here, Tzumi's advertising of its product as able to deliver a particular mAh when they were in fact not able to, "disparag[ed] [its competitors'] . . . products" and created direct liability for disparagement under Civil Code § 1770(a)(8). The multiple allegations in the Talley Action specified throughout this motion evidence the potential for "implicit

---

[40] SAC alleges at ¶ 10, "For profit and **a higher market share**, TZUMI exploits consumers' preferences for power banks with higher mAh" (emphasis added).

[41] *See Miller v. Ghirardelli*, 2013 U.S. Dist. LEXIS 49733, at *15–16 (Consumer claims for disparagement were asserted pursuant to Civil Code § 1770(a)(8) for marketing its products as "chocolate" leading "customers to falsely believe that the baking chips were (or contained) chocolate, white chocolate and/or . . . cocoa butter.")

[42] *Virtual Bus. Enters.,* 2010 Del. Super. LEXIS 141 at *20 ("In its complaint, Griffin alleged that SMC, Jacobs, and Dobrzynski attempted to 'mislead Griffin's Clients in an effort to induce them to terminate their relationship with Griffin, and switch to their new employer.' . . .. However, even in the absence of this allegation, the Policy provides coverage where a publication 'disparages a person's or organization's goods products or services.' Coverage is not limited to only those instances of disparagement under the Delaware Deceptive Trade Practices Act. The burden to identify a distinction between disparagement as generally defined and disparagement under the Delaware Deceptive Trade Practices Act falls upon the insurer."); *Welch Foods, Inc. v. Liberty Mut. Fire Ins. Co.,* No. 00-1249A, 2005 Mass. Super. LEXIS 178, *54 (Mass. Super. Ct. 2005) ("Combined with the letters to Cadbury's suppliers, Welch's alleged activities to control the Canadian grape supply could be injurious to Cadbury's reputation and disparaging of Cadbury's service, goods, or products.")

disparagement" against competing power bank producers, who, because of Tzumi's misleading advertisements, appear to overcharge for the same kind of product. Burlington ignored these latent claims—focusing improperly on its conception of the gravamen of the suit based solely on its labeled claim for "false advertising."[43]

### 2.    New York Law Recognizes Coverage for Implicit Disparagement

Coverage for "disparagement," as that word is used in a typical insurance policy, is not limited to the "trade libel" tort.[44] Tzumi allegedly misrepresented its power banks in a way that suggested competing products were inferior to its own through its misleading advertisements of mAh capacity greater than its products could actually deliver. [SMF 12, 13] A statement equating a competitor's product with an allegedly inferior one is indistinguishable from, and no less disparaging than, a statement describing one's own product as 'superior' to the competitors.[45] Here, Tzumi's advertised mAh capacity characterized all competitors as inferior, and the lack of explicit reference to particular companies or products is immaterial.

### 3.    Competitors Suffered Direct Injury

*Del Monte Fresh Produce N.A., Inc. v. Transportation Insurance Co*.[46] analyzed whether "indirect injury" created coverage for disparagement of competitors' products under 815 ILCS 510/2, a statute equivalent to Cal. Civ. Code 1770(a)(8) and also asserted in the Talley Action. [SMF 12] Even though no purchasing claimants were themselves disparaged, the court

---

[43] *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.,* 295 F. Supp. 335, 343 (S.D.N.Y. 2003) ("[T]he duty to defend is not restricted to the 'core complaint' or to the underlying plaintiff's 'primary' grievance."); *Pension Trust Fund v. Federal Ins. Co*., 307 F.3d 944, 951 (9th Cir. (Cal.) 2002) ("The duty to defend does not usually turn on whether facts supporting a covered claim **predominate or generate the claim**.") (emphasis added); *Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. (Wis.) 1994) (Posner), cited in *Cincinnati Ins. Co.*, 260 F.3d at 745 ("Nor is the insurer allowed to escape from his duties of defense and indemnity by reference to the core or dominant character of the plaintiff's allegations.")

[44] *Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.,* 207 Cal. App. 4th 969, 979 (2012).

[45] *JAR Labs. LLC,* 945 F. Supp. 2d, at 943–944 ("[T]he underlying complaint alleges that plaintiff's statements communicated 'false/misleading messages' *about Lidoderm*. . . . That plaintiff's statements did not identify Lidoderm by name is immaterial . . . . Whatever words plaintiff used, TPU clearly understood (and alleges that 'a substantial segment of consumers' would likewise believe, GAIC App. 065) that plaintiff's implicit 'message' was *about* Lidoderm. . . .").

[46] *Del Monte Fresh Produce N.A., Inc. v. Transportation Insurance Co*., No. Civ.A. 06 C 1658, 2006 U.S. Dist. LEXIS 58986, *20 (N.D. Ill. Aug 8, 2006), *aff'd*, 500 F.3d 640 (7th Cir. (Ill.) 2007).

concluded that "Del Monte's alleged efforts to publicly disparage its competitors' pineapples inevitably promoted its extra-sweet pineapples." *Id.*

In *Del Monte*, and as here, the key disparagement was based on negative comparative communication in a class action suit brought by consumers. "Del Monte launched a campaign to declare its pineapples were sweeter than those of its competitors," erroneously relying on their subsequently challenged status as patented goods.[47]

Moreover, Del Monte relied on allegations against it under California Civil Code § 1770(a)(8) for using negative comparative advertising that denigrated competing pineapple producers whose fruit did not possess the patented characteristics of Del Monte emphasized in marketing its Fresh Del Monte Gold™ pineapples. The fact allegations reference disparaging statements about a competitor that created an indirect injury, so that "injury" arose out of the fact allegations of disparagement under the statutory scheme. Subsequent cases have clarified why negative comparative statements can inferentially evidence disparagement without necessarily implicating the "knowledge of falsity" exclusion.[48] Similarly, injury to consumers allegedly arose in the Talley Action because they were dissuaded from purchasing what appeared to be overpriced products from Tzumi's competitors.

### 4.    The SAC and Settlement Agreement Demonstrate Indirect Injury

The SAC alleges the following injuries suffered by consumers:

> After purchasing the Pocket Juice 4000, Ms. Talley and Ms. Ervin were disappointed to find **they were forced to recharge the Pocket Juice 4000 more often than they expected**.
>
> Ms. Talley and Ms. Ervin, like any reasonable consumer and member of the putative classes, would not have purchased the Product, or would have paid less, **had they known the truth about its mAh**. [SMF 12] (emphasis added)

---

[47] *Id.* at *14.

[48] *Axiom Ins. Managers, LLC v. Capitol Spec. Ins. Corp.*, 876 F. Supp. 2d 1005, 1013 (N.D. Ill. (E.D.) 2012) ("Subsequent to *Del Monte*, the Illinois Appellate Court, [*Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*], 325 Ill.Dec. 483, 898 N.E.2d at 240, stated: '[s]ignificantly, alleged deliberate misconduct does not always bring a claim within an intentional conduct exclusion,' and then quoted from Cincinnati, 260 F.3d at 746. ['Proof of deliberateness would merely be icing on the cake.']").

The Settlement Agreement clarifies why the SAC asserts that the class members were adversely impacted by the anti-competitive effect of Tzumi's publications that allegedly caused consumers such as Talley to presume that their Tzumi product was better priced than competitors' products.

> [T]he **pricing** of Tzumi's power products made them **appear much more affordable than competitors' similar products** that are not claimed to be deceptively labeled[.]
>
> [C]onsumers of portable power bank devices prefer **higher charging capacity** at lower prices[.]
>
> Plaintiffs' theories of the case include that **Tzumi's portable power bank products** enjoyed commercial success because they **appeared to have more charging power for PEDs at lower prices than competing products**[.] [SMF 21] (all emphasis added)

These clarified fact assertions embedded in the Settlement Agreement act analogously to a Pre-Trial Conference Order that would have been created if the case had proceeded.[49] That document "supersedes the pleadings" as a matter of law under the Rule 16(e) of the Federal Rules of Civil Procedure.[50]

### 5.   Settlement Agreement Is "Extrinsic Evidence" Known to Burlington

The Settlement Agreement here was drafted to clarify the scope of all issues settled by the class. [SMF 21] The draft agreement was sent to Burlington prior to its second denial of coverage [SMF 16]. The proposed Settlement Agreement was submitted on July 20, 2022 [SMF 16] but the parties did not sign until August 30, 2022 [SMF 20]. Burlington was given adequate

---

[49] *In re Residential Capital, LLC*, Nos. 12-12020 (MG), 15-01025 (DSJ), 2022 Bankr. LEXIS 3601, *47–48 (Bankr. S.D.N.Y. Dec. 21, 2022) (The Claims recited in the Settlement Agreement must be evaluated as if there were either a proposed amended complaint or filed amended complaint once the Settlement Agreement was executed); *Elizabeth Arden Resort Spas, Inc. v. Bonaventure Hotel Assocs.*, No. 12-61850-CIV, 2014 U.S. Dist. LEXIS 187316, *26 (S.D. Fla. Nov. 13, 2014) (applying Connecticut law) (a defense is due when an insurer is aware of facts asserted that would implicate a defense whether through "extrinsic evidence" or by operation of known legal doctrine).

[50] *Vogelfang v. Riverhead Cnty. Jail*, No. 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064, *38–39 (E.D.N.Y. Apr. 19, 2012) (acknowledging United States Supreme Court authority holding that "a final pretrial order 'supersede[s] all prior pleadings and control[s] the subsequent course of the action.'") (*quoting Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 475 (2007)); *Perma Research & Dev. Co. v. Singer Co.*, 542 F.2d 111, 117 (2d Cir. (N.Y.) 1976) ("A pretrial order supersedes the pleadings and becomes the governing pattern of the law suit.") (Van Graafieland, J., dissenting); (*Peter v. Victor Fluid Power, Inc*., 831 F.2d 1191, 1194 (3d Cir. (N.J.) 1987); *Atlanta Pharma AG v. Tera Pharm. USA, Inc*., No.04-2355 (JLL), 2010 U.S. Dist. LEXIS 146151, *20 (D.N.J. Jul 15, 2010).

time to review, comment, and/or explore its scope. In response to the proposed Settlement Agreement, Burlington chose to simply repeat its denial of coverage rather than ask for additional information about the nature of the claims at issue. [SMF 17] In the case file turned over in discovery, there is no evidence that Burlington even reviewed the Settlement Agreement's terms before repeating its denial of coverage. [SMF 25]

There is no basis for not considering the Settlement Agreement as "extrinsic evidence" under New York law. *High Point Design, LLC v. LM Ins. Corp.* clarified that the content of interrogatory requests can expand the scope of issues embraced by claims against a defendant.[51] This is especially the case as the inferences from *High Point* underline that any articulation of a claim by the party suing the insured are germane to coverage analysis, even if the form in which they are presented is not a traditional complaint pleading. Looking to this Settlement Agreement as "extrinsic evidence" is consistent with the purpose of allowing extrinsic evidence in determining the duty to defend, as articulated by the New York Court of Appeals.[52]

Several New York cases acknowledging extrinsic evidence to allow an insurer to avoid its duty to defend have stated that "'in determining whether an insurer is obligated to defend its insured, a court may look to judicial admissions in . . . formal submissions in the current or underlying litigation **to confirm or clarify the nature of the underlying claims**.'"[53] As New

---

[51] *High Point Design, LLC v. LM Ins. Corp*, 911 F.3d 89, 97 (2d Cir. (N.Y.) 2018) ("Buyer's Direct's discovery demands sought information related to advertisements and are extrinsic evidence that supports interpreting the counterclaim's allegation of 'offering for sale' to include a claim for damages due to advertising.")

[52] *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 68, 70 (1991) ("The conclusion we reach here [that evidence beyond the 'four corners of the complaint' must be considered in determining an insurer's duty to defend] flows naturally from the fact that the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured *(see, e.g.,* 7C Appleman, *op. cit.,* § 4682, at 27 [and authorities cited therein]). . . . Indeed, a contrary rule making the terms of the complaint controlling "would allow the insurer to construct a formal fortress of the third party's pleadings * * * thereby successfully ignoring true but unpleaded facts within its knowledge that require it * * * to conduct the * * * insured's defense" *(Associated Indem. Co. v Insurance Co.,* 68 Ill App 3d 807, 816-817, 386 NE2d 529, 536). Further, an insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint. **This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them**. . . . These factors militate in favor of a rule requiring the insurer to provide a defense where, **notwithstanding the complaint allegations**, underlying facts made known to the insurer create a 'reasonable possibility that the insured may be held liable for some act or omission covered by the policy.'")

[53] *E.g., Union Mut. Fire Ins. Co. v. Tejada*, 2021 U.S. Dist. LEXIS 137766, *12–13 (S.D.N.Y. July 23, 2021) (emphasis added) (*quoting Lighton Indus. v. Alllied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 184–85

York law allows more expansive use of extrinsic evidence to implicate the duty to defend than to avoid it,[54] it follows that the language of a Settlement Agreement fulfilling exactly that purpose of "confirm[ing] or clarify[ing] the nature of the underlying claims" would be acceptable support for Tzumi's assertion that Burlington owes a defense. But it was ignored by Burlington.

Thus, more than deception of the class members about the recharging power of Tzumi's power banks and competitive pricing of the product was alleged. The SAC necessarily asserted that Tzumi caused indirect injury to those claimants by implicitly disparaging Tzumi's competitors because it allowed Tzumi to acquire more market share in the portable power bank market by "influenc[ing] or tend[ing] to influence the public not to buy" competitors' products. The SAC's failure to fully articulate this form of indirect injury is no bar to coverage.[55]

### D.      Comparable Consumer Class Action Suits Have Found the "of and Concerning" Indirect Injury to Claims Are Met

Disparagement of a competitor is analogous to the disparagement of a licensee in *Vita Craft* — both indirectly injure the claimant in a manner that implicated a duty to defend under § (d) where Hartford was the insurer. The *Vita Craft* court[56] focused on the nature of the policy language in allowing injury to a competitor to suffice:

> Vita Craft and Imura "engaged in and orchestrated a scheme to damage and injure TSI by spreading false rumors regarding one of TSI's licensees." . . . Though the complaint and response to summary judgment both asserted false and defamatory statements

---

(E.D.N.Y. 2018)).

[54] *Compare Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.,* No. 14-cv-07354 (JGK), 2016 U.S. Dist. LEXIS 96582, *17–18 (S.D.N.Y. July 22, 2016) ("Where the underlying complaint fails to allege a covered occurrence, but the insurer has actual knowledge that the action involves a covered event, 'wooden application of the "four corners of the complaint" rule would,' according to the court, 'render the duty to defend narrower than the duty to indemnify---clearly an unacceptable result.') *with Stein v. N. Assurance Co. of Am.*, 495 F. App'x 108, 111 (2d Cir. 2012) ("An insurer may only disclaim its duty to defend on the basis of extrinsic evidence 'where the evidence offered . . . allow[s] a court to *eliminate the possibility* that the insured's conduct falls within coverage of the policy.'") (*quoting IBM v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 148 (2d Cir. (N.Y.) 2004)).

[55] *Stratford Homes, Inc. v. Lorusso,* No. 94-CV-0517E (M) 1995 U.S. Dist. LEXIS 19597, *12 (W.D.N.Y. Dec. 29, 1995) ("The plaintiff seeks damages from Ambush. . . . Although such request for relief could be more precise, it would be premature at this stage in the proceedings to conclude that the monetary relief sought by the plaintiff does not include any amount for infringing conduct arising out of Ambush's advertising activity.")

[56] *Hartford v. Vita Craft Corp.,* 911 F. Supp. 2d, at 1164.

about CookTek, **they also asserted that TSI suffered damages on that account because CookTek is a TSI licensee.**[57]

### E.       Burlington's Cited Disparagement Cases Are Distinguishable

Burlington's denial of coverage presumed that "[t]here is nothing in the complaint to suggest that Tzumi said anything at all about its competitor's products – let alone anything negative and misleading – or did anything other than promote its own products." [SMF 17]

Burlington argued that *Elite Brands*[58] stands for the proposition that "there was no disparagement because the insured did not **specifically refer to its rival's products**." (emphasis added). The actual language in *Elite Brands*, however, does not support the last element bolded. New York recognizes disparagement is where there is "specific assertions of unfavorable facts reflecting upon the rival product." *Id.* The specificity requirement is for the assertion, **not the target of comparison**. This interpretation is evidenced in *Julie Research Labs.*,[59] the original source of the quoted language. There, the court included the full quotation.[60] Interpreted in context, the court's concerns were limited to mere statements of "puffery." They do not impose a requirement that a disparaging statement make direct reference to a single competitor. The statement need only "reflect[] upon the rival product," not refer to it by name.

*JMZ USA*[61] did *not* rule that there was no disparagement. Rather, it determined no *injury* arose from disparagement. The opinion is silent on the issue of whether disparagement occurred. In the Talley Action, the allegations include claims based on Cal. Civ. Code § 1770(a)(8), which has been held to impose liability for indirect injury.[62] Given this broader scope for potential injury, the inability to find *injury* in *JMZ USA* is of no moment here.

---

[57] *Id.* at 1179 (emphasis added).

[58] *Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. (N.Y.) 2006).

[59] *Julie Research Labs., Inc. v. Gen. Resistance, Inc.*, 268 N.Y.S.2d 187 (App. Div. 1966).

[60] *Id.* at 634–35 ("Mere general statements of comparison, declaring that the defendant's goods are the best on the market, or are better than the plaintiff's, are privileged **so long as they contain no specific assertions of unfavorable facts reflecting upon the rival product**. The feeling has been that the practice of sellers to make consciously exaggerated claims for their own goods is so well known that purchasers attach little or no importance to such assertions, and they usually can do no serious harm. They are sometimes said to be mere statements of opinion.") (*quoting* Prosser, Torts [3d ed.], p. 949).

[61] *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 36 A.D.3d 555, 556–57 (N.Y. App. Div. 2007).

[62] *See Miller v. Ghirardelli Chocolate Co.*, No. C 12- 04936 LB, 2013 U.S. Dist. LEXIS 49733, *15–16 (N.D.

## IV.    BURLINGTON'S DISCLAIMER OVERBROADLY CONSTRUES EXCLUSIONS

### A.    "Arising out of" Exclusion Limitation Does Not Withstand Scrutiny

Burlington's broad construction of "arising out of" policy language, despite its inclusion in an exclusion, does not withstand scrutiny.[63] New York requires it to be narrowly understood.

### B.    No Disparagement Claims Fall within the "Knowledge of Falsity" Exclusion

In Burlington's August 10, 2022 Disclaimer Letter, Burlington asserted that coverage is precluded by the policy's "Knowledge of Falsity" exclusion. [SMF 17] The exclusion, on which Burlington bears the burden of proof, applies to "'[p]ersonal and advertising injury' arising out of oral or written publication . . . if done . . . with knowledge of its falsity." [SMF 6]

Allegations of "knowledge" or intent are unnecessary to prove the Talley Action's state law false advertising claims.[64] Merely misleading advertising statements are sufficient to create liability. *Id.* For example, the SAC seeks damages under the Florida Deceptive and Unfair Trade Practices Act that prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."[65] [SMF 12] Florida courts have determined that there is no knowledge requirement for liability under that statute.[66] New York courts soundly rejected application of the knowledge of falsity exclusion on

---

Cal. Apr. 5, 2013).

   [63] *Schlather, Stumbar, Parks & Salk, LLP v. OneBeacon Ins. Co.*, 2011 U.S. Dist. LEXIS 147931, *20 (N.D.N.Y. Dec. 22, 2011) ("**[T]his term ['arising out of'] 'should be interpreted as narrowly as possible in an insurance exclusion**, because any ambiguities in insurance contracts should be resolved in favor of the insured.'") (*quoting Gluck v. Executive Risk Indem., Inc.*, 680 F. Supp. 2d 406, 419 (E.D.N.Y. 2010)) (emphasis added).

   [64] *Bridge Metal Indus., L.L.C. v. Travelers Indemn. Co.*, 812 F. Supp. 2d 527, 545 (S.D.N.Y. 2011), *aff'd on appeal by Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 559 F. App'x 15 (2d Cir. (N.Y.) 2014) ("The Court agrees that despite the allegations of intentional conduct by Plaintiffs, National's complaints asserted covered causes of actions [including false advertising] for which Plaintiffs could have been found liable without any intentional conduct. The allegations in the complaint do not foreclose the possibility that Plaintiffs could have been liable to National without the court finding that Plaintiffs knew that their conduct would violate National's rights and inflict the advertising injury at issue.")

   [65] Fla. Stat. § 501.204(1).

   [66] *Lewis v. Mercedes-Benz United States*, 530 F. Supp. 3d 1183, 1232 (S.D. Fla. 2021) ("'Willful violations occur when the person *knew or should have known* that his or her conduct was unfair or deceptive or prohibited by rule.' . . . If all conduct that was 'unfair or deceptive' under the statute required knowledge that such acts were unfair or deceptive, then the entire previous sentence would be superfluous.")

analogous facts.[67] Indeed, the seminal *Fed. Ins. Co. v. Cablevision Sys. Dev. Co.* is directly on point.[68] This exclusion cannot be applied here.

Burlington cannot establish "with conclusive evidence" that this exclusion bars coverage "in all possible worlds."[69] Equivalent exclusions have been held inapplicable to bar a defense where claims are based on allegations of false advertising that may never be proved as knowingly made with falsity.[70]

As in *Cloud Nine*, Tzumi could be found liable without finding either that it knew its advertising would violate another's rights or that it knew the statements would cause "advertising injury." Without proof of both exclusion elements, the exclusion would not even bar indemnity, let alone the duty to defend. A plethora of out of state cases are in accord.[71] The

---

[67] *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 445 (N.Y. 2002) (even allegations of "reckless" defamation do not trigger the exclusion); *PG Ins. Co. of NY v. S.A. Mfg. Co., Inc.*, 674 N.Y.S.2d 199, 200 (App. Div. 1998) (insured in Lanham Act false advertising suit owed a defense because "knowledge of falsity" exclusion could not apply, since **the insured "may be liable . . . without a showing of intentional or knowing conduct on its part . . . . Whether [the insured] engaged in intentional or knowing conduct is relevant on the issue of damages only and not liability**.") (emphasis added).

[68] *Fed. Ins. Co. v. Cablevision Sys. Dev. Co.*, 637 F. Supp. 1568, 1581, 1582–83 (E.D.N.Y. 1986) ("Disparaging statements obviously may be made wrongfully and with intent to harm the reputation of another . . . yet without any actual knowledge that such statements are false. . . . Under the "exceedingly broad" duty to defend imposed by New York law . . . and the expansive reading which must be given the complaint, **the Court cannot find that the allegations 'cast that pleading solely and entirely within the policy exclusion[]' requiring knowledge of falsity**.") (emphasis added).

[69] *Allstate Ins. Co. v. DiBartolo*, 618 N.Y.S.2d 828, 829 (App. Div. 1994) ("It is well settled that 'if **the insurer** is to be relieved of a duty to defend, it **must demonstrate that the allegations of the underlying complaint place that pleading solely, and entirely, within exclusions** of the policy, **and** that the allegations are subject to **no other interpretation**.'") (emphasis added).

[70] *Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, 464 F. Supp. 2d 1161, 1168–69 (D. Utah 2006), *rev'd on other grounds*, 458 F. App'x 705 (10th Cir. (Utah) 2012) ([T]he causes of action asserted against the Cloud Nine Defendants do not necessarily require that, in order to find liability, the defendant have knowledge of falsity or knowledge that its conduct would cause advertising injury. *See* 15 U.S.C. § 1114(1) (setting forth elements of trademark infringement); 15 U.S.C. § 1125(a) (setting forth elements of false designation of origin); Utah Code Ann. § 13–11a–3 (defining deceptive trade practices).

[71] *See, e.g., Axiom Ins. Managers, LLC v. Capitol Spec. Ins. Corp.*, 876 F. Supp. 2d 1005, 1014 (N.D. Ill. (E.D.) 2012) ("The allegation of a 'deliberate and malicious campaign,' . . . is part of the allegations regarding Axiom obtaining business by violating underwriting practices and undercutting the price, not part of the false statement allegations. . . . **[T]he defamation claim did not require proof that Axiom knew the statements about Indemnity's financial condition were false**.") (emphasis added); *Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 750 (S.D. Ind. 2009) ("Here, even though Climb Tech clearly alleged intentional misconduct in its complaint, the claim for trademark infringement unquestionably left open the possibility of liability without proof of intentional misconduct."); *American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. (Tex.) 2004) ("Texas courts have held that even where allegations involve false statements, if liability can be imposed without proving that the false statements were made with the knowledge that they were

allegations against Tzumi similarly assert intentional conduct but leave open the possibility of liability without intent. Even if the allegations could be read to assert liability based on intentional or reckless misconduct, if there is any possibility of liability based on conduct beyond the exclusion's scope the exclusion is ineffective.[72]

A Second Circuit case in which allegations that insured "knowingly, intentionally, and willfully" breached confidentiality agreement intending to misappropriate trade dress and secrets did not trigger the exclusion where the insured could be found liable without such findings.[73] Burlington cannot meet its burden of conclusively proving otherwise because there is at least one "possible world" in which Tzumi could be found liable for disparagement without any proof of Tzumi's "knowledge" that it was misleading consumers with inaccurately advertised mAh ratings on its product packaging.

Further, Tzumi's knowledge of violating the unfair competition laws is not the ultimate issue as that does not determine whether Tzumi knowingly disparaged its competitors' products. In *Vitamin Energy, LLC v. Evanston Insurance Co.*,[74] the court held that an equivalent "Knowledge of Falsity" exclusion could not preclude coverage for a disparagement claim.[75] Similarly, here, Tzumi's coverage flows not from the allegedly false statements regarding its

---

false, the 'knowledge of falsity' exclusion will not apply to preclude coverage."); *Cincinnati Ins. Co.*, 260 F.3d at 746 (7th Cir. (Ill.) 2001) (Posner) ("The counterclaim is replete with allegations of deliberate misconduct by Eastern and Integrity, but these allegations do not take the case out of the basic policy. . . . It is also possible that Midwest is describing as deliberate misconduct a case in which deliberate disparagements are made even if the disparager is merely negligent with regard to their truth. **Unless he knows that his disparagements are false, he is not within the basic policy's exclusion.**") (emphasis added).

[72] *St. Paul Ins. Co. v. Landau, Omahana & Kopka, Ltd.,* 619 N.E.2d 1266, 1271 (Ill. App. Ct. 1993) ("The various paragraphs of the Conti complaint . . . allege that defendants acted not only intentionally but also recklessly and maliciously. . . . Allegations of recklessness may bring a defamation claim within the potential coverage of a policy which covers defamation but excludes knowing falsehoods.")

[73] *Bridge Metal Indus.,* 812 F. Supp. 2d at 544–45.

[74] *Vitamin Energy, LLC v. Evanston Insurance Co.,* 22 F.4th 386 (3d Cir. (Penn.) 2022).

[75] *Id.* at 396 ("Evanston cites 5-hour Energy's allegation that Vitamin Energy infringed on 5-hour Energy's trademarks with actual knowledge that it was doing so. But again, Vitamin Energy seeks coverage based on a different claim: its allegedly false or misleading representation about the vitamin content of 5-hour Energy's products. Vitamin Energy's alleged knowledge of trademark infringement does not eliminate coverage for a disparagement claim, and so does not eliminate the duty to defend.")

devices' mAh capacities, but rather from the implied assertion of superiority that thereby disparaged its competitors' products.

### C.   Negative Comparisons Fall Outside "Failure to Conform" Exclusion

The Policy's "Failure to Conform" exclusion precludes coverage for "'[p]ersonal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement'." [SMF 6] As the Third Circuit recently explained, this exclusion cannot take effect when the statement triggering coverage is directed at competitors' products.

> Relying on other cases interpreting similar provisions, Evanston asserts that the exclusions pertain to descriptions of the insured's own products. Be that as it may, as discussed above, it is Vitamin Energy's alleged misrepresentation of the ingredients in 5-hour Energy's products, not Vitamin Energy's own products, that creates the possibility of coverage.[76]

So here the issue for resolution is not whether "false advertising" claims fall within the "Failure to Conform" exclusion, but whether the fact allegations support a potential claim for disparagement (the only operative focus for analyzing the applicability of an exclusion). The exclusion is inapplicable here for the same reasons denoted in *Vitamin Energy*: a "Knowledge of Falsity" exclusion applies to false statements regarding *one's own* products where disparagement claims flow from the statement regarding a *competitor's* products. *Id*. Tzumi's coverage is triggered by the implied disparagement of competitors' products, not the direct assertion of Tzumi's products' own quality. Indeed, the *Vitamin Energy* court explicitly acknowledged that if the "Failure to Conform" exclusion "were read broadly to encompass allegations supporting a potential disparagement claim, then the exclusions would render the Policy's coverage for injury arising out of 'disparaging material' a nullity, which again we doubt the parties intended." *Id*. The court flatly rejected any interpretation of the "Failure to Conform" exclusion—such as advanced by Burlington—that led to the exclusion of disparagement claims.

---

[76] *Vitamin Energy,* 22 F.4th at 396.

291772_8.doc-7/28/2023 9:09 AM

The plain language of the "Failure to Conform" exclusion [SMF 6] prevents its application in the context of implied disparagement claims, especially where they allege indirect injury, as here. In such cases, coverage is predicated upon the implied inferiority of competitors' products, not the asserted superiority of the policyholder's own products.[77] Because coverage arises from Tzumi's disparagement of competitors' products, the failure of the Tzumi devices to deliver the advertised mAh is irrelevant to the analysis of this exclusion.

### D.       A "Wrong Price Description" Is Not a Disparagement Allegation

The policy's "Wrong Price Description" exclusion precludes coverage for "'[p]ersonal and advertising injury' arising out of the wrong description of the price of goods, products or services stated in your 'advertisement.'" [SMF 6] In Burlington's Disclaimer Letter, Burlington asserts this exclusion on grounds that "[t]he complaint alleges that Tzumi misrepresented the price of its power banks in that their value was much less than what should have been provided by the price paid by consumers." [SMF 19]

Burlington provides no authority—not a single case, statute, or other explanation—for its leap from the policy's language regarding "price" to the concept of "value." New York law has established that "Wrong Price Description" exclusions apply only in a very narrow circumstance: when consumers are "charged more or less than the price advertised."[78] Because neither the SAC nor the Settlement Agreement of the Talley Action allege any such discrepancy between an

---

[77] *Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*, No. C 12-05465 WHA, 2013 U.S. Dist. LEXIS 71499, *20–21 (N.D. Cal. May 20, 2013) ("Here, the harm did not proceed from whether Tria's products were indeed superior. It arose out of the implication from Tria's advertising that Radiancy's products were inferior. . . . [I]n the implied disparagement context . . . the harm arises out of "negative comparisons Plaintiff made about competitors vis-a-vis Plaintiff's products."); *Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, 475 F. App'x 213, 214 (9th Cir. (Az.) 2012) ("ShotSpotter's injury claimed in the underlying action does not arise out of the failure of Safety Dynamics's product to conform to its advertisements. Rather, it is a competitive injury. This exception "is directed to the failure of goods, not the failure of advertising."); *Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005, 1007–08 (N.D. Cal. 2010) ("It is irrelevant whether Plaintiff's products actually possessed the attributes advertised by Plaintiff.' . . . In contrast to *Total Call*, the Court here found clearly implied disparagement, which removed the case from the purview of the nonconformity exception."); *Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp., Inc.*, No. 8:05CV315, 2007 U.S. Dist. LEXIS 21456, *25 (D. Neb. Mar. 12, 2007) ("Alpharma's alleged injury is due to Pennfield's implicit disparagement of Alpharma's product . . . . [It] would not be remedied if Pennfield's products were to conform to the allegedly false advertised quality.").

[78] *Dollar Phone Corp.*, No. CV-09-1640 (DLI) (VVP), 2012 U.S. Dist. LEXIS 45591, *32 ("There is no allegation in the New Jersey Complaint that consumers were charged more or less than the price advertised for Dollar Phone's calling cards, and on the face of this ['Wrong Price Description'] exclusion, it cannot apply.").

advertised price and the price paid by consumers, Burlington cannot employ the "Wrong Price Description" exclusion to deny Tzumi coverage.

### E.     Disparagement Claims Have No Relationship to Any "Trade Law" Claims

The policy's "Trade Law" exclusion precludes coverage for:

> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny federal, state or local statute, ordinance or regulation other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting recording, sending, transmitting, communicating or distribution of material or information. [SMF 6]

Burlington asserted that this exclusion bars coverage for "loss that results from the actual or alleged violation of various types or categories of laws—of relevance here unfair or deceptive trade practices, unfair competition or other consumer protection laws." [SMF 19]

*Vitamin Energy* analyzed an analogous exclusion barring coverage for "Advertising Injury arising out of . . . unfair competition . . . ."[79] It reached the same conclusion there as it did in its analysis of the "Failure to Conform" exclusion: interpreting the exclusion to extend to disparagement claims would entirely nullify the policy's grant of coverage for such claims.[80] The same logic applies here where Burlington's expansive reading of the policy's "Trade Laws" exclusion would similarly eviscerate all coverage for disparagement.

In *Sprint Lumber, Inc. v. Union Insurance Co.*, the court considered to what extent a "Personal Information" exclusion with equivalent "arising out of" language might be stretched to prevent coverage for disparagement.[81] The court rejected its application because inclusion of claims falling within the exclusion was irrelevant so long as disparagement was also alleged.[82]

---

[79] *Vitamin Energy*, 22 F.4th at 395.

[80] *Id.* at 395–96 ("The [unfair competition] term thus does not necessarily bar coverage based on allegations supporting a potential disparagement claim under Michigan law. Indeed, if the exclusion did bar coverage because of allegations supporting a potential disparagement claim, it would arguably render the Policy's coverage of injury from 'disparaging material' (J.A. at 185) a nullity, which we doubt the parties intended.").

[81] *Sprint Lumber, Inc. v. Union Ins. Co.*, 627 S.W.3d 96, 112 (Mo. Ct. App. 2021) (Policy excluded coverage of "'[p]ersonal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customers lists, financial information, credit card information, health information or any other type of nonpublic information.").

[82] *Id.* at 112–13 ("Again, Union's argument under this point is based on its characterization that all of Porters's

The same principle holds true under New York law.[83] Burlington's disclaimer letter employs the same "sweeping" characterization rejected by the *Sprint Lumber* court when it asserts that "[w]here, as here, the complaint alleges losses that resulted from an insured's violation of such laws, the exclusion clearly precludes coverage." [SMF 19] As in *Sprint Lumber*, the presence of unfair competition claims is an irrelevant distraction from what should be the court's sole focus—the alleged disparagement giving rise to potential coverage.

## V.    CONCLUSION

Tzumi moves for a partial summary judgment that Burlington owed a duty to defend Tzumi throughout the Talley Action but breached its duties to defend and settle the Talley Action. Upon entry of that judgment Tzumi will submit evidence of the defense and settlement costs and seek a final judgment prejudgment interest at 9% per annum.

Dated: July 31, 2023

| | |
|---|---|
| **THE KILLIAN FIRM, P.C.** | **GAUNTLETT & ASSOCIATES** |
| By: /s/ Eugene Killian, Jr., | David A. Gauntlett, Esq., pro hac vice |
| Eugene Killian, Jr., Esq. NY Bar No. 2043289 | Gauntlett & Associates |
| 555 Route 1 South, Suite 430 | 18400 Von Karman, Suite 300 |
| Iselin, NJ 08830-3151 | Irvine, CA 92612 |
| Telephone: (732) 912-2100 | Tel: (949) 553-1010/ Fax: (949) 553-2050 |
| Facsimile: (732) 912-2101 | dag@gauntlettlaw.com |
| ekillian@tkfpc.com | |

Attorneys for Plaintiff
TZUMI ELECTRONICS LLC

---

allegations in the Underlying Suit centered on and sought damages for the wrongful and unlawful misappropriation and disclosure of confidential information and trade secrets. That characterization, however, is far too sweeping. As discussed in point one, the Underlying Suit also involved the wrongful solicitation of its customers through the disparagement of Porters.")

[83] *Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, 96 Civ. 5993 (JSM), 1997 U.S. Dist. LEXIS 8894, *8 (S.D.N.Y. June 24, 1997) ("Under Meyers, it is clear that Fireman's Fund's duty to defend is not triggered by Anton/Bauer's patent claims. Nonetheless, the Fund does have a duty to defend if any of the claims fall within the scope of the policy coverage.").