UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TZUMI ELECTRONICS LLC,

Plaintiff,

-v.-

THE BURLINGTON INSURANCE COMPANY,

Defendant.

22 Civ. 9995 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Tzumi Electronics LLC ("Tzumi" or "Plaintiff") is the holder of a commercial general liability policy issued by Defendant, the Burlington Insurance Company ("Burlington" or "Defendant"), for the period spanning December 19, 2017, to December 19, 2018 (the "Policy" (Dkt. #39-3)).  Plaintiff filed the instant lawsuit after Defendant denied coverage under the Policy for claims brought against Plaintiff in an underlying consumer class action, *Talley* v. *Tzumi Electronics LLC*, No. 20 Civ. 4074 (VM) (S.D.N.Y. May 27, 2020) (the "Underlying Action").

Now before the Court are the parties' cross-motions for summary judgment regarding the propriety of Defendant's denial of coverage.  Plaintiff argues that the Underlying Action was covered under the Policy's "Personal and Advertising Injury" clause, which covers claims arising out of an insured's alleged disparagement of a person's or organization's goods, products, or services.  Defendant counters that denial of coverage was appropriate because the claims brought in the Underlying Action did not implicate any express or

implied theories of disparagement with respect to Plaintiff, and that even if they did, various policy exclusions would bar coverage.  For the reasons set forth in the remainder of this Opinion, the Court finds that the claims brought in the Underlying Action do not constitute disparagement claims that are covered by the Policy's "Personal and Advertising Injury" clause.  Accordingly, the Court grants Defendant's cross-motion for summary judgment, and denies Plaintiff's cross-motion for summary judgment.

## BACKGROUND[1]

### A.   Factual Background

#### 1.   The Policy

Plaintiff is a multinational corporation engaged in the manufacture and sale of various consumer electronics products, including a variety of power

---

[1]   The facts set forth in this Opinion are drawn from the parties' submissions in connection with their cross-motions for summary judgment. The Court primarily sources facts from Burlington's Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #41)); Tzumi's Local Rule 56.1 Response to Burlington's 56.1 Statement ("Pl. Resp. 56.1" (Dkt. #51)); Tzumi's Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #44)); Burlington's Local Rule 56.1 Response to Tzumi's 56.1 Statement ("Def. Resp. 56.1" (Dkt. #54)); from the Policy (Dkt. #39-3); and from the Second Amended Complaint brought in the Underlying Action (the "SAC" or the "Underlying Complaint" (Dkt. #39-2)).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

For ease of reference, the Court refers to Burlington's memorandum of law in support of its motion for summary judgment as "Def. Br." (Dkt. #40); to Tzumi's memorandum of law in opposition to Burlington's motion as "Pl. Opp." (Dkt. #55); to Tzumi's

banks used for the charging of portable electronic devices, such as smart phones, tablets, and laptop computers.  Defendant issued the Policy to Tzumi, providing insurance coverage, subject to certain terms and conditions, for covered occurrences including — as relevant to the instant dispute — "personal and advertising injury."  (*See* Policy § B.1.a (covering "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies")).

The Policy further defines "[p]ersonal and advertising injury" to cover injury arising out of several enumerated categories, including false arrest, detention, or imprisonment; malicious prosecution; wrongful eviction; wrongful entry; slander or libel of a person or organization's goods, products, or services; "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products[,] or services"; publication of material that violates a person's right of privacy; the use of another's advertising idea; and copyright infringement. (Policy § 14.a-g).

Conversely, the Policy expressly disclaims any "duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply," and contains a list of specific exclusions.  (Policy § B.1.a).  As an example, the Policy specifically excludes "'[p]ersonal and advertising injury' arising out of the failure of goods, products,

---

memorandum of law in support of its motion for summary judgment as "Pl. Br." (Dkt. #43); and to Burlington's opposition to Tzumi's motion as "Def. Opp." (Dkt. #52).

or services to conform with any statement of quality or performance made in

[insured's] 'advertisement.'"  (*Id.* § B.2.g (the "Failure To Conform" exclusion)).

The Policy also enumerates exclusions for personal and advertising injury

arising out of the publication of materials with knowledge of their falsity;

breach of contract; distribution in violation of law; and the wrong description of

prices.  (*See generally id.* § B.2.a-p).

> ###     2.     The Underlying Action and Plaintiff's Claims for Coverage

On or before August 27, 2019, Tzumi notified Burlington of an insurance

claim regarding a class action lawsuit contemplated by two consumers, Lori

Ervin and Sybil Griffin, in connection with certain power bank devices sold by

Tzumi.  (Pl. 56.1 ¶ 7; Def. 56.1 ¶ 9).  Tzumi's notice of claim appended the

putative class action complaint, as well as a "letter of representations from the

attorney representing [Ervin and Griffin], alleg[ing] that Tzumi misrepresented

and continues to misrepresent" the charging capacity of Tzumi's power banks.

(Adrian Decl., Ex. D, E).  By letter dated August 27, 2019, Burlington informed

Tzumi that the allegations contained in the putative complaint did not

"constitute an enumerated offense in the definition of personal and advertising

injury as defined [by the Policy]," and, in the alternative, that various

exclusions in the Policy barred coverage for Tzumi's claim.  (*Id.*, Ex. E; Def.

56.1 ¶ 10).

Unable to resolve the power bank dispute pre-litigation, on May 27,

2020, Sydney Talley, now joined by Lori Ervin (together, the "Underlying

Plaintiffs"), filed a class action lawsuit against Tzumi in the United States

District Court for the Southern District of New York.  (Pl. 56.1 ¶ 9).  *See Talley* v. *Tzumi Elecs. LLC*, No. 20 Civ. 4074 (VM), Dkt. #1 (S.D.N.Y. May 27, 2020). In that lawsuit, the Underlying Plaintiffs, seeking to represent a nationwide class of Tzumi retail customers, broadly alleged that Tzumi's power banks were not as powerful as Tzumi represented them to be.  *See generally id.*  On June 29, 2021, the Underlying Plaintiffs filed a Second Amended Class Action Complaint alleging breaches of various consumer protection statutes, including the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41-17.63, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213.  *See Talley* v. *Tzumi Elecs. LLC*, No. 20 Civ. 4074 (VM), Dkt. #32 (the "SAC" or the "Underlying Complaint") ¶¶ 57-88 (S.D.N.Y. June 29, 2021).  The Underlying Plaintiffs also generally alleged violations of California, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, and Washington consumer protection statutes (SAC ¶¶ 89-99),[2] as well as breach of express warranty claims on behalf of all class members (*id.* ¶¶ 100-108).

---

[2]     Specifically, the SAC alleges violations of "at least the following state consumer protection statutes":

> California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1784; California Business and Professions Code, Cal. Bus. & Prof. Code §§ 17200-17210; California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17509; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1-505/12; Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, §§ 1-11; Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901-445.922; New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1-56:8-227; New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349-350-f-1; North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1-75-145;

In support of their claims, the Underlying Plaintiffs alleged that Tzumi deceived customers about the energy capacity of the power banks.  (*See, e.g.*, SAC ¶ 10).  In particular, the Underlying Plaintiffs identified misrepresentations made by Tzumi on the packaging of its products, which misrepresentations conveyed a far greater energy capacity than was actually determined by independent lab testing.  (*Id.* ¶¶ 19-32).  The Underlying Plaintiffs maintained that they relied on these misrepresentations when purchasing Tzumi products in retail stores and thus were harmed by these deceptive acts.  (*Id.* ¶¶ 33-42).

Litigation of the Underlying Action proceeded without incident, and on July 20, 2022, Tzumi requested that Burlington reconsider its position with respect to Tzumi's claim for coverage.  (Def. 56.1 ¶ 11).  Tzumi appended to this request a proposed settlement agreement between Tzumi and the Underlying Plaintiffs, which agreement Tzumi alleged constituted "extrinsic evidence" that the Underlying Complaint triggered coverage under the Policy.  (*Id.*; Adrian Decl., Ex. F).  Of potential significance to the instant motions, the proposed settlement agreement included a statement that "Tzumi interprets the allegations in the Complaint as alleging that Tzumi implicitly asserted that its power products were of significantly higher value but at a lower price than

---

Ohio's Consumers Sales Practices Act, Ohio Rev. Code §§ 1345.01-1345.99; Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41-17.63; and Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010-19.86.920.

(SAC ¶ 98).

similar products of its competitors, implicitly negatively comparing competing products[.]" (Weinberger Decl., Ex. 8 (the "Underlying Settlement Agreement") at 1).

Tzumi maintained that the Underlying Action implicated claims covered by the "personal and advertising Injury" provision of the Policy, which provisions indemnified liability in connection with Tzumi's "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." (Adrian Decl., Ex. F). Tzumi contended that "[t]he assertions in the proposed settlement agreement establish the potential for a claim of disparagement or implied disparagement of competitors' products." (*Id.* at 1-2).

By letter dated August 10, 2022, Burlington informed Tzumi that it would adhere to its earlier denial of coverage, citing two principal bases for its position. *First*, Burlington asserted that

> neither the Underlying Complaint nor the proposed settlement agreement alleged "disparagement" insofar as Tzumi was not alleged to have made specific references to its competitor's products, such that the "personal and advertising injury" clause would have been triggered under the [] Policy.

(Def. 56.1 ¶ 12). *Second*, Burlington maintained that even if the Underlying Complaint ostensibly alleged disparagement, "various exclusions apply, and preclude any coverage for the claims alleged against Tzumi in the [Underlying Action]." (*Id.*).

On August 30, 2022, the parties to the Underlying Action entered into a confidential settlement agreement, resolving that matter. (Def. 56.1 ¶ 4;

Underlying Settlement Agreement).  *See also Talley* v. *Tzumi Elecs. LLC*, No. 20

Civ. 4074 (VM), Dkt. #42 (Notice of Dismissal) (S.D.N.Y. Sept. 7, 2022).

**B.    Procedural History**

On November 23, 2022, Tzumi filed the instant action, seeking a

declaratory judgment that Burlington had a duty to defend Tzumi in the

Underlying Action, as well as damages for breach of contract owing to

Burlington's failure to defend and indemnify Tzumi in the Underlying Action.

(Dkt. #1).  After receiving an extension, Burlington filed its answer on

January 26, 2023.  (Dkt. #13, 21).

On February 13, 2023, Tzumi filed a letter motion seeking a pre-motion

conference on its contemplated motion for partial summary judgment.

(Dkt. #26).  Thereafter, on February 17, 2023, the Court held an initial pretrial

conference, at which the parties discussed Tzumi's contemplated motion as

well as the parties' expectations with respect to discovery in the case.  (Feb. 17,

2023 Minute Entry).  Following the conference, the parties proposed, and the

Court entered, a civil case management plan that provided for the close of fact

discovery on May 15, 2023; the close of expert discovery, if any, on June 30,

2023; and the submission of motions for summary judgment on or before

July 31, 2023.  (Dkt. #28-29).

Following the close of discovery, the parties submitted their cross-

motions for summary judgment on July 31, 2023.  (*See* Dkt. #38-41

(Burlington motion papers), 42-46 (Tzumi motion papers)).  On August 30,

2023, the parties submitted their respective opposition papers.  (*See* Dkt. #47-

51 (Tzumi opposition papers), 52-55 (Burlington opposition papers)).  Though briefing had closed in the matter, on September 11, 2023, Burlington submitted a letter request for supplemental briefing (Dkt. #57), which request Tzumi opposed by letter filed on September 12, 2023 (Dkt. #58).  By endorsement issued September 13, 2023, the Court denied Burlington's request to file supplemental briefing and informed the parties that no further submissions were required.  (Dkt. #59).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions for Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[3]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

---

[3]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Furthermore, "[m]ere conclusory allegations or denials … cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

## 2. Interpretation of Insurance Contracts Under New York Law

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Porco* v. *Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (internal quotation marks omitted) (citing *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001)). Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp.* v. *Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir.

2002) (citation omitted); *see also Parks Real Estate Purchasing Grp.* v. *St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).  Where, as here, "[t]he parties do not dispute the material facts underlying the claim," the case rests on the court's interpretation of the insurance contract. *VAM Check Cashing Corp.* v. *Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

A court must interpret unambiguous contractual provisions in light of "their plain and ordinary meaning." *10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (internal quotation marks omitted) (citing *Essex Ins. Co.* v. *Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)).  That is, the court must construe such terms "in light of 'common speech' and the reasonable expectations of a businessperson." *Belt Painting Corp.* v. *TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (internal citation omitted).  If a contract term is "susceptible to at least two reasonable interpretations," summary judgment is inappropriate because the meaning of an ambiguous contract term is "generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Inst.* v. *Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989) (internal citations omitted).  In contrast, if the contractual terms are unambiguous, the dispute is properly resolved on summary judgment, and the court must "give effect to the intent of the parties as expressed in the clear language of the contract." *Mt. Vernon Fire Ins. Co.* v. *Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks and citation omitted).

Finally, while "the duty to defend is broader than the duty to indemnify," *Fitzpatrick* v. *Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991), where "there is no duty to defend, there also is no corresponding duty to indemnify," *Ogden Corp.* v. *Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991).  As such, "an insurer will be called upon to provide a defense whenever the allegations of the [underlying] complaint suggest a reasonable possibility of coverage."  *Brooklyn Ctr. for Psychotherapy, Inc.* v. *Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020) (quoting *Auto. Ins. Co. of Hartford* v. *Cook*, 7 N.Y.3d 131, 137 (2006)).  Put differently, an insurer has no duty to defend or to indemnify "if it can be concluded as a matter of law that there is no possible factual or legal basis on which the defendant might eventually be held to be obligated to indemnify [the] plaintiff under any provision of the insurance policies."  *Id.* at 310 (alteration adopted) (quoting *Mary & Alice Ford Nursing Home Co.* v. *Fireman's Ins. Co. of Newark*, 446 N.Y.S.2d 599, 600 (3d Dep't 1982)).

## B.    The Underlying Action Is Not Covered by the Policy Under Either an Express or Implied Disparagement Theory

The Court observes, as a threshold matter, that the parties do not dispute the plain meaning of the Policy.  Neither party contests the textual interpretation of the Personal and Advertising Injury provision generally, nor does either party suggest that the term "disparages" is itself either patently or latently ambiguous.  *See Ezrasons, Inc.* v. *Travelers Indem. Co.*, 89 F.4th 388, 394-96 (2d Cir. 2023) (discussing interpretation of patent and latent ambiguities under New York law).  Nor are there any material facts in dispute

with respect to the allegations of the Underlying Action.  (*See generally* Pl. 56.1; Def. 56.1).

Instead, the parties principally disagree on the extent to which these undisputed facts — in particular, the allegations regarding Plaintiff's conduct contained in the Underlying Complaint — can support a claim for coverage under a disparagement theory, as interpreted by New York courts applying New York law.  To begin, courts have found that "[u]nder New York law, a claim of disparagement must contain 'specific assertions of unfavorable facts reflecting upon the rival product.'"  *Elite Brands, Inc.* v. *Penn Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. 2006) (summary order) (quoting *Brignoli* v. *Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1209 (S.D.N.Y. 1986)).  Plaintiff contends that the record, including in particular the Underlying Complaint and the Underlying Settlement Agreement, establishes that the Underlying Action alleged actionable disparagement under New York law.  (*See* Pl. Br. 2-9). Defendant argues to the contrary, disputing Plaintiff's characterization of the record as "an incoherent argument that the Court should read the Underlying Complaint as if it were a disparagement claim ... despite the fact that it is not." (*See* Def. Opp. 6).  Alternatively, Defendant argues that various exclusions to the Policy foreclose coverage.  (*See id.* at 1; Def. Br. 2).

As elaborated herein, the Court, on its own review of the record, finds that the facts alleged in the Underlying Action do not provide for a reasonable possibility of coverage under the Policy, and thus that Burlington's denial of coverage was appropriate.  Because the Court finds that Plaintiff has not

13

"established its initial entitlement to coverage, [the Court] need not consider what consequences for that coverage might have arisen from the [] exclusion[s]" identified by Defendant.  *Kim-Chee LLC* v. *Phila. Indem. Ins. Co.*, No. 21-1082, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022) (summary order) (internal quotation marks and citation omitted).

### 1.    The Underlying Complaint Does Not Expressly Allege Disparagement

Plaintiff argues unconvincingly in the first instance that the Underlying Complaint affirmatively alleges an express disparagement claim, suggesting in particular that the "[Underlying Complaint] included claims for violations of Cal. Civ. Code § 1770(a)(8) and analogous statutes under the laws of Illinois, Michigan, and Texas."  (Pl. Br. 2).  Plaintiff's argument is belied by the text of the Underlying Complaint, however, in which pleading Plaintiff's proffered citation is nowhere to be found.  (*See generally* SAC).  Rather, Plaintiff's argument depends on the unreasonable assumption that the Underlying Complaint's passing citation to the entirety of the California false advertising statute, as part of a longer list of general citations to the consumer protection statutes of eleven states, somehow implicates the specific provision of the California code on which now Plaintiff relies for coverage.  (Pl. Br. 11 (citing Pl. 56.1 ¶ 12 (quoting SAC 1-18))).

Plaintiff's argument, however, is predicated on an unduly speculative basis for coverage.  Indeed, the section of the California code on which Plaintiff relies enumerates twenty-eight distinct categories for "unfair methods of competition and unfair or deceptive acts or practices," ranging from the general

14

"[p]assing off goods or services as those of another," to the specific
"[a]dvertising furniture without clearly indicating that it is unassembled if that
is the case." *See* Cal. Civ. Code § 1770(a)(1), (11).  It is simply unreasonable to
accept, based on Plaintiff's self-serving interpretation of the Underlying
Complaint, that the Underlying Plaintiffs intended to invoke Cal. Civ. Code
§ 1770(a)(8) in their allegations.  *See Stamford Wallpaper Co., Inc.* v. *TIG Ins.*,
138 F.3d 75, 81 (2d Cir. 1998) ("[W]e will not hypothesize or imagine episodes
or events that cannot be found among the [underlying] allegations, and cannot
reasonably be deduced from them."); *Century 21, Inc.* v. *Diamond State Ins. Co.*,
442 F.3d 79, 82 (2d Cir. 2006) (concluding that the "duty to defend will not be
imposed through a strained, implausible reading of the complaint").

Perhaps if Plaintiff had opted to litigate the Underlying Action on its
merits and obligated the Underlying Plaintiffs to refine their position with
respect to the specific violations alleged under the state consumer protection
statutes, facts might have been developed that could plausibly implicate the
provision on which Plaintiff now relies.  *See High Point Design, LLC* v. *LM Ins.
Corp.*, 911 F.3d 89, 95-97 (2d Cir. 2018) (observing that discovery requests
made in underlying litigation served as extrinsic evidence that such litigation
was covered by the relevant insurance policy).  Instead, Plaintiff attempted to
short-circuit such an approach here, by negotiating a confidential settlement
agreement with the Underlying Plaintiffs that sought to transmogrify the actual
allegations made in the Underlying Complaint into something resembling a
covered disparagement claim.  Accordingly, the Court finds that express

15

disparagement has not been alleged in the Underlying Complaint, and that
Plaintiff is not entitled to coverage on that basis.

> ## 2. The Underlying Complaint Does Not Allege Implied Disparagement

Next, Plaintiff suggests a theory of implicit disparagement, under which
"[t]he underlying suit is not required to specifically allege a 'disparagement'
cause of action to create potential coverage for implied disparagement." (Pl.
Br. 4). On this point, Plaintiff contends that "[d]isparagement can be found
based on mere inferences so long as they are reasonably derived from the facts
pled." (*Id.* (citing *Dollar Phone Corp.* v. *St. Paul Fire & Marine Ins. Co.*, No. 09
Civ. 1640 (DLI) (VVP), 2012 WL 1077448, at *6 (E.D.N.Y. Mar. 9, 2012), *report
and recommendation adopted*, No. 09 Civ. 1640 (DLI) (VVP), 2012 WL 1078994
(Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013) (summary order);
*E.piphany Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1249,
1253 (N.D. Cal. 2008))). In response, Defendant argues that the facts of the
Underlying Action implicate only claims arising from consumer injury, and do
not extend to implied disparagement. (Def. Opp. 8-9 (citing *Dollar Phone Corp.*,
2012 WL 1077448, at *6)).

As noted above, "[t]he law in New York is clear: '[A] claim of
disparagement must contain specific assertions of unfavorable facts reflecting
upon the rival product,' in order to be actionable." *Tzumi Innovations LLC* v.
*Twin City Fire Ins. Co.*, No. 22 Civ. 10004 (RA), 2023 WL 5183681, at *5
(S.D.N.Y. Aug. 11, 2023) (quoting *Elite Brands,* 164 F. App'x at 62); *see also
Dollar Phone Corp.*, 2012 WL 1077448, at *6 ("[T]he Second Circuit [has] held

[in *Elite Brands*] that while an advertisement that reflects poorly on a competitor may have caused some harm, the absence of a specific unfavorable reference to the competitor's product precluded policy coverage for a claim of disparagement." (citing *Elite Brands*, 164 F. App'x at 62)).  In other words, there must be "some identifying statement that compares the advertised product to those sold by competitors," even if the competitor's product is not expressly identified by name.  *Dollar Phone Corp.*, 2012 WL 1077448, at *8 (collecting cases).

Moreover, while Plaintiff is generally correct that courts may infer these unfavorable comparisons from the facts alleged, Plaintiff's suggestion that such a theory of coverage can be supported by "mere inferences" misstates the relevant standard.  (Pl. Br. 4).  The law is clear that inferences of disparagement must be reasonably inferred from the underlying facts.  *See Stamford Wallpaper Co., Inc.*, 138 F.3d at 81 ("[W]e will not hypothesize or imagine episodes or events that cannot be found among the [underlying] allegations, and cannot reasonably be deduced from them.").  Such a standard is consistent with broader principles of insurance contract interpretation that an insurer's duties "will not be imposed through [] 'strained, implausible reading[s] of the complaint that [are] linguistically conceivable but tortured and unreasonable.'"  *Century 21, Inc.*, 442 F.3d at 82 (quoting *Northville Indus. Corp.* v. *Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 621, 635 (1997)).  The Court's review of the Underlying Complaint discloses *no* allegation that Plaintiff made any comparison of its products to those of its competitors, favorable or

otherwise.  Rather, the Underlying Complaint's allegations focus entirely on Plaintiff's misrepresentations regarding the capabilities of its power banks, with no mention of Plaintiff's competitors or their products.  (*See generally* SAC ¶¶ 19-38).  At face value, therefore, the Underlying Complaint contains no basis on which disparagement can be reasonably inferred.

In an attempt to salvage its claim, Plaintiff posits that every time a seller makes "false claims about the superiority of its own products," such statements "necessarily impl[y] the inferiority of [] competing products."  (Pl. Br. 5 n.3 (quoting *Hartford Cas. Ins. Co.* v. *Swift Distrib., Inc.*, 210 Cal. App. 4th 915, 927 (2d Dist. 2012)); *see also* Pl. Opp. 4 ("By marketing its products with allegedly misleading labels … [Plaintiff] necessarily denigrated its competitors' products as inferior for not delivering the same value.")).  Plaintiff's argument, however, distends disparagement into a theory by which a seller disparages the market as a whole, by falsely boasting of the general superiority of its products.  (*See, e.g.*, Pl. Br. 11 (suggesting that Plaintiff committed disparagement by making false advertisements to gain "a higher market share"); Pl. Opp. 4 (same)).  Such an argument is wrong for several reasons.  At its core, Plaintiff's theory overlooks the clear requirement under New York law that claims of disparagement must implicate specific unfavorable comparisons made by an entity regarding its competitors, even if the comparison is implicit, rather than express.  *Elite Brands,* 164 F. App'x at 62 (finding that New York law requires that claims of disparagement "must contain '*specific* assertions of unfavorable facts reflecting upon the *rival product*" (emphasis added) (internal quotation

marks and citation omitted)).  Presumably for this reason, Plaintiff's theory has been rejected by the very courts on which it relies to support its argument. (*See, e.g.*, Pl. Br. 5, 21).  For example, in *Vector Products*, the Eleventh Circuit observed that disparagement cannot be inferred "where the insured made no comparison to any other product, but merely touted its own product."  *Vector Prods., Inc.* v. *Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005). Likewise in *Vitamin Energy*, the Third Circuit remarked that disparagement does not lie where "[an] alleged advertising injury said nothing disparaging about the [competitor's] product," but rather represented an insured's attempt to boost the sales of its own product through use of competitor's good reputation.  *Vitamin Energy, LLC* v. *Evanston Ins. Co.*, 22 F.4th 386, 393 (3d Cir. 2022).  Accordingly, the weight of authority in New York and elsewhere confirms that an entity cannot support a claim for disparagement without making "some reference or comparison to the competitor's products," either express or implicit, lest claims for disparagement become unmoored from their plain meaning.  *Dollar Phone Corp.*, 2012 WL 1077448, at *8 ("[T]he plain meaning of the word 'disparage' would require some reference or comparison to the competitor's products.").

As a fallback position, Plaintiff suggests that the Underlying Complaint alleges disparagement, inasmuch as it recites that Plaintiff's misstatements regarding its power banks were designed to boost its sales and thereby capture market share from its competitors.  (Pl. Br. 11 (citing SAC ¶ 20)).  Even this allegation, however, fails to suggest that Plaintiff sought to gain an advantage

by casting aspersions on its competitors or their products in order to depress their sales.  Rather, the allegation, like others in the Underlying Complaint, reflects only that Plaintiff sought profit by making misstatements with respect to its own products, and therefore does not support a reasonable inference of disparagement.  (SAC ¶¶ 33-39).  *Cf. Spandex House, Inc.* v. *Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 249 (S.D.N.Y. 2019) ("The duty to defend is triggered only if there is a '*reasonable* possibility of recovery' under the policy." (quoting *Fieldston Prop. Owners Ass'n, Inc.* v. *Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011))), *aff'd*, 816 F. App'x 611 (2d Cir. 2020) (summary order).

Unaided by the allegations in the Underlying Complaint, Plaintiff pivots to the Underlying Settlement Agreement, which Plaintiff contends "clarifies" the allegations in the Underlying Complaint.  (*See* Pl. Opp. 6).  The Court, however, is not so moved.  True, "insurers are to look beyond the four corners of the complaint in deciding whether there is coverage."  *High Point Design*, 911 F.3d at 95.  That said, consideration of extrinsic evidence is only significant where the "underlying facts made known to the insurer create a reasonable possibility that the insured may be held liable for some act or omission covered by the policy."  *Id.* at 96-97 (citing *Fitzpatrick*, 78 N.Y.2d at 68).  Importantly, the extrinsic evidence rule deals with *underlying facts*, and "not merely a party's conclusory characterization of the conduct."  *Consol. Edison Co. of New York, Inc.* v. *ACE Am. Ins. Co.*, — F. Supp. 3d —, No. 21 Civ. 9216 (GHW), 2023 WL 3569273, at *8 (S.D.N.Y. May 18, 2023) (citing *Allstate Ins. Co.* v. *Mugavero*, 79 N.Y.2d 153, 162-63 (1992)).  To that end, "an insured's right to a defense

20

should not depend solely on the allegations that a third party chooses to put in the complaint," or, by extension, a settlement agreement. *High Point*, 911 F.3d at 95 (quoting *Fitzpatrick*, 78 N.Y.2d at 98).

As Defendant correctly observes, the Underlying Settlement Agreement represents nothing more than Plaintiff's wishful thinking, *i.e.*, an attempt to substitute Plaintiff's preferred version of the Underlying Litigation for the facts actually alleged in the Underlying Complaint.  (Def. Br. 10-13).  In point of fact, however, the Underlying Settlement Agreement merely formalizes Plaintiff's interpretation of the allegations in the Complaint; it does not introduce any new factual allegations containing specific misstatements or misrepresentations that Tzumi made regarding its competitors, and therefore does not provide any extrinsic evidence to support coverage.  (*See, e.g.*, Underlying Settlement Agreement 1-2 (reciting merely that "Tzumi interprets the allegations in the Complaint as alleging [] Tzumi's implicit disparagement of its competitors")).  *See RSUI Indem. Co.* v. *RCG Grp. (USA)*, 890 F. Supp. 2d 315, 331 (S.D.N.Y. 2012) (observing that "speculation as to what a third party may conceivably someday claim, in the underlying litigation, … is insufficient to satisfy [an insured's] burden to prove coverage"), *aff'd*, 539 F. App'x 3 (2d Cir. 2013) (summary order).  Nor does it matter that the Underlying Plaintiffs, by signing on to the Underlying Settlement Agreement, seemingly endorsed Tzumi's tenuous theory of disparagement, as such endorsement does not change the fact that neither the Underlying Complaint nor the Underlying Settlement Agreement provides any factual evidence that Tzumi made any

21

misstatements or misrepresentations regarding a competitor that would trigger coverage under a disparagement theory.  *See Consol. Edison Co.*, 2023 WL 3569273, at *8 ("[I]t is the facts which are pleaded, not the conclusory assertions, that determine whether there is a duty to defend." (internal quotation marks omitted) (citing *Mugavero*, 79 N.Y.2d at 162)).

Ultimately, the Underlying Settlement Agreement reflects Plaintiff's ineffectual attempt to "construct a formal fortress of the [U]nderlying [C]omplaint's pleadings and retreat behind its walls."  *Lexington Ins. Co.* v. *MGA Ent'mt, Inc.*, 961 F. Supp. 2d 536, 549 (S.D.N.Y. 2013) (alteration adopted) (quoting *Gray* v. *Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966)); *see also G.M. Sign, Inc.* v. *State Farm Fire & Cas. Co.*, 2014 Ill. App. 2d 130593, at *83, *as modified on denial of reh'g* (2d Dist. Sept. 2, 2014) (observing that insured's "attempt[] to recharacterize, at the eleventh hour, the class action that it had already litigated and negotiated to settlement, for purposes of obtaining insurance coverage … [was] not a strategy that courts should condone" (citing *James River Ins. Co.* v. *Fortress Sys., LLC*, 899 F. Supp. 2d 1331, 1335 (S.D. Fla. 2012) (rejecting an insured's attempt to "reverse course" and "change the factual basis" of a settlement reached in the underlying litigation in order to get "a second bite at the apple to plead into coverage" in an insurance coverage dispute))).

What is more, the Court notes that Tzumi has attempted, without success, to shop its implied disparagement theory to other courts in this District.  First, Tzumi advanced an implied disparagement argument in a

coverage action regarding an underlying patent infringement suit brought by Therabody.  *See Tzumi Elecs. LLC* v. *Burlington Ins. Co.*, No. 22 Civ. 10307 (JMF), 2023 WL 4931656 (S.D.N.Y. Aug. 2, 2023).  There, Tzumi sought to root its theory in Therabody's patent infringement claims, suggesting that implied disparagement arose in connection with "Tzumi's use of Therabody's advertising ideas in Tzumi's advertisements."  *Id.* at *3 (alteration adopted). Judge Furman rejected Tzumi's argument, finding that such an argument "[was] impossible to square with the [underlying complaint], which … pleads only patent infringement claims."  *Id.*  Indeed, Judge Furman observed that Tzumi's position "does not find support in the [underlying complaint's] factual allegations; instead it depends on rewriting them altogether."  *Id.*

        Less than two weeks later, Judge Abrams reached a similar conclusion on facts more analogous to those here.  *See Tzumi Innovations LLC* v. *Twin City Fire Ins. Co.*, No. 22 Civ. 10004 (RA), 2023 WL 5183681 (S.D.N.Y. Aug. 11, 2023).  In that case, Tzumi attempted to make an implicit disparagement argument in a coverage action brought in connection with a different consumer class action, one that alleged that Tzumi had made false and misleading claims regarding its surface decontaminating wipes.  There, as here, Tzumi offered a "theory of coverage — based on a somewhat contorted attempt to invoke the 'disparagement' definition of a 'personal and advertising injury' under the Policy."  *Id.* at *4.  In particular, Plaintiff argued "that, '[b]y allegedly misleading customers [with respect to] Tzumi's products … , Tzumi inevitably create[d]

doubt as to the authenticity of the claims of similarly situated products, thereby disparaging its competitors.'"  *Id.*

And there, as here, the court rejected Tzumi's theory out of hand, "find[ing] 'no possible factual or legal basis' in the [underlying complaint] for a disparagement claim."  *Tzumi Innovations LLC*, 2023 WL 5183681, at *4 (quoting *Brooklyn Ctr. for Psychotherapy, Inc.*, 955 F.3d at 310).  Notably, Judge Abrams observed that the "allegations [in the underlying complaint] focus solely on Tzumi's *own* products, and how consumers were allegedly harmed by purchasing products that they otherwise 'would not have purchased … if they had known that the products had [been improperly labeled.]"  *Id.*  These allegations, Judge Abrams found, "cannot be reasonably construed as disparaging or derogating the competitor products — they merely illustrate how Tzumi allegedly sought to promote its own products in a misleading fashion."  *Id.*  Ultimately, Judge Abrams's careful reasoning is equally applicable to the facts of the instant case, and the Court declines to adopt a different approach.[4]

---

[4]    To that end, the Court observes that Plaintiff devotes a substantial portion of its opposition brief to attempting to undercut the clear relevance of Judge Abrams's decision to this case.  The vast majority of these attempts, however, are rooted in Plaintiff's disagreement with Judge Abrams's *legal* conclusions and are irrelevant to this Court's analysis of the facts of the Underlying Action and their applicability *vel non* to the Policy.  (*See* Pl. Opp. 11-22).  As its principal basis for distinguishing the two cases, Plaintiff suggests that Judge Abrams's decision "failed to address an issue of first impression posed under New York law — whether potential coverage arises under [the personal and advertising injury provision] for claims asserting California Civil Code § 1770(a)(8)."  (*Id.* at 11-12).  Plaintiff's argument is unavailing, however, as this Court has found that the Underlying Complaint in this action also does not implicate California Civil Code § 1770(a)(8).  Accordingly, the Court declines Plaintiff's invitation to revisit the *Tzumi Innovations* decision.

Plaintiff similarly derives no support from the cases it cites from other jurisdictions.  For starters, the vast majority of those cases clearly involved factual allegations of unfavorable statements made by the insured about a rival business.  *See, e.g.*, *Hanover Ins. Co.* v. *Anova Food, LLC*, No. 14 Civ. 281 (HG) (RLP), 2016 WL 3620730, at *10 (D. Haw. June 29, 2016) (cataloging the numerous "oral and written publication[s] of material [by insured] that disparaged the fish and meat products that were produced using the [competitor's] … process"); *Hartford Fire Ins. Co.* v. *Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1179 (D. Kan. 2012) (noting that the underlying complaint alleged that insured "engaged in and orchestrated a scheme to damage and injure [competitor] by spreading false rumors regarding one of [competitor's] licensees," including by making specific reference to that licensee); *Del Monte Fresh Produce N.A., Inc.* v. *Transp. Ins. Co.*, No. 06 Civ. 1658 (SBC), 2006 WL 2331144, at *5-7 (N.D. Ill. Aug. 8, 2006) (observing that the insured allegedly "launched a campaign to declare its pineapples were sweeter than those of its competitors," including by "disseminat[ing] disparaging information about its [specific] competitors"); *Winklevoss Consultants, Inc.* v. *Fed. Ins. Co.*, 11 F. Supp. 2d 995, 999 (N.D. Ill. 1998) (finding that the underlying complaint "clearly contains allegations of fact that [insured] made false statements about [competitor's] goods in attempt to steer customers away from [competitor's] product and toward [insured's] product" sufficient to "satisfy the [] laymen's definition of 'disparage'" (citation omitted)).

Even in those cases identified by Plaintiff where a competitor was not expressly named, courts found disparagement only after concluding that the facts supported a reasonable inference that the entity had made an unfavorable reference to its competitor.  *See JAR Lab'ys LLC* v. *Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 943 (N.D. Ill. 2013) (observing that "[insured's] literal statements can reasonably be read to identify [competitor] explicitly, if not by name"); *Nat. Organics, Inc.* v. *OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204, 207 (2d Dep't 2013) (finding clear inference of disparagement where insured's announcement of an exclusive distributorship necessarily implied that a competing distributor's offerings were unauthorized); *Acme United Corp.* v. *St. Paul Fire & Marine Ins. Co.*, 214 F. App'x 596, 600 (7th Cir. 2007) (summary order) (finding inference of disparagement was supported by "[competitor's] specific[] alleg[ations] that [insured's] advertisements were directed at [competitor's] products and that [competitor] lost sales to [insured] as a result").

Ultimately, Plaintiff's theory of disparagement is supported by neither the applicable legal standard nor the undisputed facts.  As discussed above, the essence of a disparagement claim is a party's unfavorable reference to or comparison with its competitors, either expressly alleged or reasonably inferred from the underlying facts.  Try as it might, Plaintiff cannot conjure up such comparisons in the Underlying Complaint, which alleges only that Plaintiff made misleading representations to consumers about the capabilities of its own products.  Accordingly, as there is "no possible factual or legal basis" for

Plaintiff's theory of disparagement, the Court finds that Defendant had no duty to defend in the Underlying Action, and that Defendant properly denied coverage.  *See Brooklyn Ctr. for Psychotherapy*, 955 F.3d at 310; *see also Dollar Phone Corp.*, 2012 WL 1077448, at *7 ("While [an insurance] contract must be construed in favor of the insured, that does not require the court to stretch the words of the contract or create fictitious causes of action.").[5]

## C.   **Plaintiff's Breach Of Contract Claim Is Duplicative**

Finally, Defendant argues that Plaintiff's breach of contract claim, pleaded as Count 2 of its complaint, is duplicative.  (Def. Br. 12).  "[C]laims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" *Deutsche Bank Nat'l Tr. Co.* v. *Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quoting *Amcan Holdings, Inc.* v. *Canadian Imperial Bank of Com.*, 894 N.Y.S.2d 47, 50 (1st Dep't 2010)); *see also, e.g.*, *JN Contemp. Art LLC* v. *Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022).  Significantly, Plaintiff does not dispute Defendant's characterization of the breach of contract claim, nor does it address Defendant's argument regarding the breach of contract claim at all. Accordingly, the Court reviews the evidence in the record to determine whether

---

[5]     As noted above, because the Court has found that Plaintiff "never established its initial entitlement to coverage, [the Court] need not consider what consequences for that coverage might have arisen from the [] exclusion[s]" that Defendant maintains operate to bar coverage.  *Kim-Chee LLC* v. *Phila. Indem. Ins. Co.*, No. 21-1082, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022) (summary order) (internal quotation marks and citation omitted); *see also Michael Cetta, Inc.* v. *Admiral Indem. Co.*, 506 F. Supp. 3d 168, 185 n.5 (S.D.N.Y. 2020) ("Because the Court concludes that [insured] fails to establish entitlement to coverage under the Policy, it need not reach the question of whether these various exclusions would apply.").  (*See* Def. Br. 8-10).

Defendant has demonstrated an entitlement to relief.  *Accord Vt. Teddy Bear Co.* v. *1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("clarify[ing] the procedure to be followed when a motion for summary judgment is unopposed").

Plaintiff's complaint sets forth two causes of action.  (Compl. ¶¶ 81-98).  The first count seeks a declaration that Defendant has a duty to defend Plaintiff in the Underlying Action.  (*Id.* ¶¶ 81-88).  The second is for breach of contract, alleging that Defendant breached the Policy by refusing to defend Plaintiff in the Underlying Action.  (*Id.* ¶¶ 89-98).  The two claims arise from the same contract (*i.e.*, the Policy), seek the same remedy — reimbursement of defense costs and indemnification of settlement payments made by Plaintiff — and rely upon identical factual allegations.  Indeed, as Defendant correctly notes, the two claims are phrased almost identically.  (Def. Br. 12).  As such, the Court will dismiss Plaintiff's breach of contract claim as duplicative of its claim for declaratory relief.  *See Shear Enters., LLC* v. *Cohen*, 137 N.Y.S.3d 306, 309 (1st Dep't 2020) (Where a "cause of action repeats the same allegations … almost verbatim," that cause of action "should [be] dismissed as duplicative." (citing *Ullman-Schneider* v. *Lacher & Lovell Taylor, P.C.*, 994 N.Y.S.2d 72, 73 (1st Dep't 2014))); *see also Paladini* v. *Capossela, Cohen, LLC*, No. 11 Civ. 2252 (LAP), 2012 WL 3834655, at *6 (S.D.N.Y. 2012) (dismissing as duplicative claims that "state the same injuries verbatim" and seek an "identical … form of relief").

**CONCLUSION**

For the reasons enumerated herein, Defendant's cross-motion for summary judgment is hereby GRANTED.  Plaintiff's cross-motion for summary judgment is hereby DENIED.  The Clerk of Court is directed to terminate all pending motions, including those at docket numbers 38 and 42, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   January 19, 2024
           New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge